Fuld, J.
This appeal, here by our permission, requires us to decide whether under the circumstances presented a tenant, following a fire which destroyed the leased premises, is entitled to recover from his landlord the amount of rent, paid in advance, for the unexpired portion of the term.
George Gallery leased property which he owned in West Seneca, New York, to Frank Hoefler in June of 1957, for use as a bowling alley. The lease agreement, a printed form, provided, in a typewritten insertion, for a tenancy of one year from August 1, 1957 at an annual rental of $12,000, the full amount of which was paid in advance. In case the premises were destroyed by fire or were so damaged as to render them untenantable, printed paragraph 5 of the form lease declared, either party could terminate the lease upon 30 days’ notice and, it went on to specify, " at the end of such thirty days the tenant shall pay all rent to the date of said fire and surrender * * * said premises discharged of this lease.”
Some weeks after taking possession of the premises, the tenant obtained a policy of fire insurance from the National Union Fire Insurance Company . It insured his “ leasehold interest ”, which was defined in the policy as “ the Insured’s interest in the amount of advance rental paid by [him] and not recoverable ” from the landlord under the terms óf the lease.
In November of 1957, a little more than three months after Hoefler moved in, a fire occurred rendering the premises unusable. The tenant gave notice of an intention to terminate the lease and asked the landlord to return the sum of $8,766.67, representing the ‘ ‘ unearned ’ ’ rental for the balance of the term. The landlord acquiesced in the lease’s termination, but refused to refund any part of the rent. The tenant then requested payment under its policy from the insurance company. When the latter also refused to pay—on the ground that the tenant was entitled to recover from the landlord—Hoefler instituted this action against both landlord and insurer, demanding judgment against the one or the other. After issue was joined, the plaintiff moved for summary judgment and Special Term, concluding that the landlord was entitled to retain the entire year’s *372 rent and that the insurance company was liable on its policy, granted summary judgment against the latter and denied it against the former. Only the insurance company appealed to the Appellate Division and, of course, it alone appeals to this court from the Appellate Division’s affirmance.
Quite obviously,, the plaintiff is entitled to recover, the sole question being, against whom. If he may recover from his landlord, there will have been no loss under the policy, since, by its terms, it covers him only if the “ advance rental ” is " not recoverable ’ ’ from the landlord. If, on the other hand, he is not entitled to recover from his landlord, then, the insurance company concedes, it would be liable on the policy and obliged to pay. Disposition of the insurance company’s appeal depends, therefore, on plaintiff’s rights against the landlord.[1]
In days gone by, at common law, absent agreement to the contrary, destruction of a building on land held under lease did not entitle the tenant to terminate his obligations under the lease or to recover any portion of the rental paid in advance, even though such destruction deprived him of the benefits of the lease. One aspect of the injustice attendant upon application of this rule was remedied in this State by enactment in 1860 of a statute giving the lessee an option to terminate the lease and surrender the premises whenever they were rendered untenantable through no fault of his own and the parties had made no express agreement to the contrary (L. 1860, ch. 345; L. 1896, ch. 547, § 197; see Butler v. Kidder, 87 N. Y. 98).
Until 1937, the statute, present section 227 of the Beal Property Law, remained substantially unchanged; it recited that, where any leased building was destroyed by the elements, " and no express agreement to the contrary has been made in writing ’ ’, the tenant might, if the destruction occurred without his fault or neglect, surrender possession and be relieved of liability "{ to pay * * * rent for the time subsequent to the surrender.” Since it was silent on the subject of apportioning rent paid in advance, pur courts continued to apply the common-law doctrine, which permitted the landlord to retain any and all rent in his hands at the time the destruction occurred. (See Werner v. Padula, 49 App. Div. 135, 138, affd. 167 N. Y. 611.) In 1937, *373 however, the Legislature, undoubtedly believing that the rule of no apportionment of advance rent was as inequitable and as unjust as had been the rule of no termination, amended section 227 to mandate the apportionment of such rent, by adding the following sentence (L. 1937, ch. 100):
1‘ Any rent paid in advance or which may have accrued by the terms of a lease or any other hiring shall be adjusted to the date of such surrender.”
The language of the statute, as it now reads, is plain, its purpose clear. Unless the parties entered into an agreement to the contrary, the plaintiff in the ease before us is entitled to recover from his landlord ‘ ‘ rent paid in advance * * * adjusted .to the date of * * * surrender ’ ’ of the premises. The only question, therefore, is whether the lease contains or reflects an .agreement “ contrary ” to the provisions of section 227. If there was no contrary agreement, the statute controls and the landlord is liable; if, on the other hand, the lease contains a provision contrary to that of the statute, the lease provision prevails.
It is the defendant landlord’s contention that there was such a contrary agreement, and that it is to be found in paragraph 5 of the lease, which recites that the tenant “ shall pay all rent to the date of [the] fire ”. The argument does not withstand analysis. The recital—that the tenant shall pay all rent to the date of the fire — is “ boiler plate ” in a printed form lease and was rendered meaningless and inoperative by the parties’ stipulation, set forth, significantly, in typescript, that the full year’s rent be paid in advance. If the clause requiring payment of rent to the time of the fire is deemed inoperative, there is not a word in the lease as to the question here in issue, the liability of the landlord for rent paid in advance. Since, therefore, to quote from section 227, there is no ‘ ‘ express agreement to the contrary ’ ’, the statute’s explicit mandate that there be an apportionment of the advance rent must be obeyed.
Even if paragraph 5 were, however, to be considered pertinent and operative, it would not advance the landlord’s position. The plain fact is that the paragraph reflects an understanding that rent should be paid only for the time during which actual possession and enjoyment of the premises are possible, an understand *374 ing consonant rather than inconsistent with section 227. We would pervert the ordinary meaning of language were we to read the recital that the tenant “ shall pay all rent to the date of [the] fire ” as an agreement that the landlord retain all rent paid in advance. On the contrary, this provision can only mean that nothing was to be paid on account of the period after the fire and, since the rent for the entire year was payable in advance, the provision must be read to give the tenant the right to obtain a refund of the amount attributable to the period following the fire. Thus, paragraph 5, if operative at all, evidences the same spirit as does section 227, a desire to avoid the injustice of a tenant paying rent for premises destroyed through no fault or neglect of his own.
The landlord seeks to avoid this construction of paragraph 5 by pointing to the circumstance that the tenant took out a policy insuring him against the loss of his advance rental. This means, it is argued, that the tenant recognized that the lease gave him no right to the return of any of the rent paid in advance. The answer to the contention is twofold.
In the first place, the effect of section 227 may only be obviated, as provided in the section, by an “ express agreement to the contrary ’ ’ between the tenant and his landlord. The fact, and it is not clear that it is the fact in this case, that the tenant may have taken out the insurance because he mistakenly gauged his rights, does not create the requisite agreement to the contrary. If, under the terms of the lease, read in the light of the statute, the landlord was under a duty to refund the “ unearned ” rent, he remained under such a duty despite the existence of the tenant’s insurance policy. In other words, the rights and duties of the landlord and tenant are determined solely by the lease and are not affected by third-party agreements. The tenant may well have taken the policy to guard against a number of conditions and events other than and in addition to his failure to recover the rent paid in advance. Consequently, the existence of such insurance is entirely irrelevant to the basic issue of landlord-tenant obligations.
In the second place, the fact that the tenant herein applied for insurance, or that the insurance company wrote the policy, does not necessarily mean that he, or the insurer, construed the lease to deny the tenant the right to the return of any advance rental. *375 Had that been the construction put on the insurance contract by the insured and the insurer, they would have simply defined the insured’s “leasehold interest” as “the amount of advance rental paid by the Insured ” without adding — as they did — “ and not recoverable under the terms of the described lease (Italics supplied.) Be that as it may, though, the likelihood is that Hoefler procured the insurance simply because he was not sure what his rights were under the various contingencies which could eventuate and wanted to provide against any and all of them.
However we construe paragraph 5 — whether we regard it as meaningless and inoperative or whether we read it as importing into the lease the provisions of section 227 — the statute controls and requires us to conclude that the landlord is liable to his tenant for the “ unearned ” rent. And since the policy written by the defendant insurance company obligates it only if such rent is not “ recoverable ” from the landlord, the former may not be subjected to liability on the record before us. It follows, therefore, that the plaintiff’s motion for summary judgment against the insurance company should not have been granted and that, had the plaintiff appealed from the order denying his motion for summary judgment against the landlord, we would have reversed and granted such motion. Since, however, the plaintiff took no appeal, this court may not now dispose of his action against the landlord; its determination must await a trial or an application at Special Term for reargument of the motion.
Our decision accords not only with the sense and spirit of section 227 of the Beal Property Law, but with what must have been the understanding of the parties. On the one hand, it enforces payment from the tenant for value received, for his use of the premises until the fire forced him out of possession, while, on the other hand, it prevents the landlord from gaining a windfall and retaining that for which he has given no value.
The judgment of the Appellate Division should be reversed and summary judgment granted dismissing the complaint against the defendant National Union Fire Insurance Company, with costs in all courts.

. Hoefler having died following our grant of leave to appeal, his executors were substituted as parties plaintiff.