Charles H. Cohen, J.
Pursuant to an agreement dated April 1, 1969, prepared by defendant Repetti, plaintiffs leased certain premises consisting of a restaurant, bar and grill from Repetti for a term of 10 years commencing April 1, 1969. The agreed rental was $575 per month for the first year, $650 per month for the second year, and $750 per month for the remaining years. Paragraph Fourth of this lease provided as follows:
" The Tenant shall have the right to assign this lease without obtaining the Landlord’s permission providing he shall comply with the following:
“ (1) He shall guarantee the Landlord 10 day notice in writing of the name and the address of the assignee, and
“ (2) He shall deliver to the Landlord and [sic] assumption agreement executed by the assignee.
“ (3) That the Tenant herein shall continue liable under the terms of this lease.
“ (4) That the Landlord shall receive an additional six (6) months rent of $4,500.00 as security which said sum shall be applied on account of rent due on each 12th month, ensuing assignment of said lease until said additional six (6) month security shall have been liquidated.
“ The Landlord agrees to deposit all securities paid under the terms of this lease in a savings account and the interest therefrom shall accrue to the Tenant and shall be paid upon the termination of this lease, together with any security due. ”
Paragraph Twenty-Ninth of this lease provided as follows: “ The Tenant has this day deposited with the Landlord the sum of One Thousand Five Hundred ($1,500.00) Dollars as security for the faithful performance of the obligations of this lease which said sum shall be returned to the Tenant upon the expiration of the term of this lease, providing he shall not then be in default, the said security shall be returned with the payment of interest thereon. ”
By assignment dated October 16,1969, this lease was assigned by plaintiffs to defendant Kathrane for $15,000, payable $2,000 *197 upon execution of the assignment and the balance of $13,000 over a period of years. Plaintiffs complied with the assignment provisions of the lease and in accordance with subdivision (4) of paragraph Fourth turned over $4,500 to Repetti. The assignment, signed by plaintiffs and Kathrane, declared that all interest in the^sum of $4,500, as well as in the sum of $1,500 paid by plaintiffs in accordance with paragraph Twenty-Ninth, shall remain vested in plaintiffs. Subsequent assignments of the lease were made and now the premises are occupied by one Rosenberg as tenant under the lease. On May 1, 1970, Repetti conveyed the premises to defendant Sarflo Realty Co.
The first part of this action involves the claim by plaintiffs that they are entitled to recover the deposits made pursuant to paragraphs Fourth and Twenty-Ninth of the lease, or at least that part of the $4,500 deposit which was to be applied in accordance with subdivision (4) of paragraph Fourth. With respect to this claim, they are suing Kathrane, Repetti an4 Sarflo.
BEAL PABTT IN" INTEBEST
Before considering the position of each of these defendants, the court will first examine the defense, although not pleaded affirmatively, that plaintiffs cannot recover in any event because they are not the real parties in interest. This defense is based" upon a document dated January 9, 1971 whereby plaintiffs assigned “ all of our right, title and interest, in and. to the security and prepaid rent ” set forth in the lease involved herein and directed that payment of any such funds be made to Bennett Oppenheimer, Esq. A copy of this assignment was sent by Oppenheimer to the attorney for Sarflo by letter dated January 28,1971. In this letter, Oppenheimer stated that the * ‘ security ’ ’ of $1,500 and the “ additional security and pre-paid rent” of $4,500 had been assigned to him and demanded payment.
This assignment, of itself, would ordinarily defeat plaintiffs’ causes of action to recover the security deposits, since it placets in Oppenheimer legal title to the claim being asserted. (See Spencer v. Standard Chem. <& Metal Corp., 237 N. Y. 479.) However, Oppenheimer is plaintiffs’ attorney. He is not only plaintiffs’ attorney of record in this action but he tried this case for plaintiffs and stated on the record that he was merely plaintiffs’ agent to collect the sums claimed. Under the circumstances, it is clear that plaintiffs are in fact the real parties in interest. The test to be used in applying this rule is whether payment to “ plaintiff will protect the defendant from the claims of third parties. ” (General Inv. Co. v. Interborough R. T. Co., 200 App. Div. 794, 802, affd. 235 N. Y. 133). As stated in Matter *198 of Scott v. Board of Educ. Union Free School Dist. No. 17, 61 Misc 2d 333, 336: ‘ ‘ The real party in interest rule is a rule of substantive law intended to protect one being sued from having to defend against the same claim a second time because someone other than the petitioner or plaintiff was the owner of the claim and, therefore, the only person entitled to sue. ” Any defendant herein who may be required to pay plaintiffs’ claim would certainly be protected against any claim by the third party, Oppenheimer, for the same money. It would be unrealistic to look solely to the written assignment made by plaintiffs to their attorney where, in this very action, he disclaims any interest in the claim, both by bringing this action for plaintiffs and by so indicating on the record. Under these circumstances, it would serve no useful purpose to dismiss the action on this ground. Such a dismissal, which the court would specify as not being on the merits (see CPLR 5013), would presumably be followed by a new action in which the same matter would be relitigated by the named assignee, Oppenheimer, as plaintiff, or, after a written reassignment to plaintiffs by Oppenheimer, by these same plaintiffs again. To require such a course of action would make the real party in interest requirement “more important than the purposes which it seeks to accomplish ”. (Eisinger v. Stern, 57 Misc 2d 16, 21.) To the extent that it may be necessary to amend the complaint to reflect the disclaimer by Oppenheimer and a reassignment to plaintiffs (cf. Spencer v. Standard Chem. & Metal Corp., 237 N. Y. 479, 482, supra), the complaint may be deemed amended (CPLR 3025, subd. [c]) even though no formal motion to that effect was made. (Helman v. Dixon, 71 Misc 2d 1057, 1062 and cases cited therein.) This cannot cause any surprise or prejudice to defendants Kathrane, Repetti and Sarflo who, if liable at all on the claims asserted against them herein, would be liable to plaintiff or Oppenheimer in any event. At the same time, there will be a prompt disposition on the merits without needless multiplicity of litigation. (See Helman v. Dixon, supra.) Accordingly, the court finds that the real party in interest defense is insufficient.
CLAIM AGAINST KaTHBANE
While there is apparently some litigation pending by plaintiffs against Kathrane for the unpaid purchase price of the lease, it is difficult to see how the tenant Kathrane could possibly be liable for deposits made by plaintiffs with the landlord which Kathrane never received. Kathrane was a party in the ‘ ‘ tenant chain ”, not in the “ landlord chain. ” The court finds no liability on the part of Kathrane.
*199 CLAIM AGAINST REPETTI AND SARFLO
The deposits in question were paid by plaintiffs to Repetti in accordance with the provisions of the lease. Repetti, upon conveying the premises to Sarflo, delivered these deposits to Sarflo which still hold them. Plaintiffs seek to recover these deposits by reason of violation of the provisions of section 7-103 of the General Obligations Law (the successor to former Real Property Law, § 233) and section 7-105. Alternatively, plaintiffs seek to recover, under the terms of the lease, at least that part of the $4,500 deposit claimed to be due pursuant to subdivision (4) of paragraph Fourth.
Subdivisions 1 and 2 of section 7-103 of the General Obligations Law state, in part, as follows:
“1. Whenever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for performance of the contract or agreement or to be applied to payments upon such contract or agreemenirwben due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section 7-105 of this chapter.
“2. Whenever the person receiving money so deposited or advanced shall deposit such money in a banking organization, such person shall thereupon notify in writing each of the persons making such security deposit or advance, giving the name and address of the banking organization in which the deposit of security money is made, and the amount of such deposit. ”
Apparently, it is conceded that this statute is applicable to the $1,500 deposit, but some question is raised as to whether it is applicable to the $4,500 deposit. An examination of the words of the statute makes it clear that it is applicable whether the deposit was made ‘ * as security for performance of the contract or agreement or to be applied to payments upon such contract or agreement when due ” (§ 7-103, subd. 1). Thus, whether called security or prepaid rent, the statute is applicable to these deposits. See Matter of Perfection Tech. Serv. Press (Cherno-Dalecar Realty Corp.) (22 A D 2d 352, app. dsmd. 16 N Y 2d 958, affd. 18 N Y 2d 644), where the court applied the statute in a situation involving prepaid rent. It is also noted that in the instant case subdivision (4) of paragraph Fourth of the *200 lease, prepared by Repetti, calls the additional deposit of $4,500 “ security ”,
While the $1,500 deposit was put into a rent security account in accordance with subdivision 1 of section 7-103, Repetti violated this statute with respect to the $4,500 deposit by commingling it in a bank account with his own funds and drawing checks on that account for his own purpose. While disputed by Repetti, the court further finds that he violated subdivision 2 of section 7-103 and section 7-105 (subd. 1, par. A) with respect to both deposits by failing to give the notices required by those sections. Upon Repetti conveying the premises to Sarflo on May 1, 1970, he delivered to Sarflo a check in the amount of $1,562.78, which represented the $1,500 deposit plus interest accrued thereon, and another check in the amount of $4,500 representing the $4,500 deposit. The question to be decided is whether these violations entitle plaintiffs to a recovery of one or both of the deposits made with Repetti, keeping in mind the fact that on October 16, 1969, plaintiffs assigned the lease to Kathrane and were no longer in possession of the premises after that date.
As far as the $4,500 deposit is concerned, it is necessary to consider whether Repetti’s commingling of this deposit with his own funds constituted a conversion of money which the statute declares is to be held in trust. Where at the time of trial the deposit was intact and the person making the deposit was in possession, it has been decided that, despite such commingling, there is no conversion and, consequently, there can be no recovery of the deposit. (160 Realty Corp. v. 162 Realty Corp., 113 N. Y. S. 2d 618, affd. 280 App. Div. 762: Bridge Hardware Co. v. Mayer, 131 N. Y. S. 2d 823; 19 North Vil. Realty Corp. v. Kominos, 3 Misc 2d 768, affd. 3 A D 2d 754; Tow v. Maidman, 56 Misc 2d 468.) However, in the absence of these conditions, the commingling constitutes a conversion entitling “ the person making the deposit ” (§ 7-103, subd. 1) to the recovery of the deposit. (Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.], 22 A D 2d 352, app. dsmd. 16 N Y 2d 958, affd. 18 N Y 2d 644, supra; Matter of Holst Co. [Arutt], 213 N. Y. S. 2d 952; see Matter of Izrue Corp. [Carr], 58 Misc 2d 343; cf. 2710 8th Ave. v. Forman Pharmacy, 180 Misc. 376.) As stated by the Appellate Division, Second Department (Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.], 22 A D 2d 352, 354, supra), in refusing to allow a landlord to set off a security deposit against a landlord’s claim for rent and directing the landlord to pay the balance of the security deposit to the assignee for the benefit of creditors of the person making the deppsit, *201 “ the statute * * * expressly constitutes the landlord a trustee and forbids him to mingle the deposit with his personal funds. Consequently, any such commingling is now deemed to be a conversion * * * which entitles the tenant to immediate recovery of the deposit intact ’ ’. While this language would seem to indicate that there is a conversion regardless of whether “ the person making the deposit ” was still in possession, plaintiffs, although liable under the lease in accordance with subdivision (4) of paragraph Fourth, have not been in possession since they assigned the lease to Kathrane on October 16, 1969. Moreover, there is even a question as to whether the security deposit is still intact. While Eepetti turned over $4,500 to Sarflo as a security deposit when he conveyed the premises on May 1, 1970 and there is no showing that Sarflo commingled it, there is a question as to whether the payment of $4,500 was sufficient to reconstitute the trust fund. In paragraph Fourth of the lease, the landlord Eepetti agreed “ to deposit all securities paid under the terms of this lease in a savings account and the interest therefrom shall accrue to the Tenant ’ \ While the statute did not require that this deposit be placed in an interest-bearing account, where interest is earned it also constitutes (beyond an administrative expense of 1% per annum) trust money. (General Obligations Law, § 7-103, subd. 2; cf. Stuarco v. Slafbro Realty Corp., 30 A D 2d 80.)
It is recognized that in cases such as Matter of Perfection Tech. Servs. Press (Cherno-Dalecar Realty Corp.) (22 A D 2d 352, supra), involving assignments for the benefit of creditors, the commingled trust funds became payable to the assignees rather than “ the person making the deposit.” This, however, arises from the fact that the assignor, which had made the deposit, assigned all of its assets to the assignee. (Debtor and Creditor Law, § 3; Matter of Forty Wall St. Corp. [Eberstadt], 258 App. Div. 108.) An assignment of a lease alone, without specifically referring to a security deposit, and including a security deposit for unpaid rent, would not pass title to the security deposit. (Shattuck v. Buek, 158 App. Div. 709; Nemtzoff v. Vagnier, 163 N. Y. S. 1075; cf. Matter of Izrue Corp. [Carr], 58 Misc 2d 343, supra.) Moreover, in this case, when plaintiffs assigned the lease to Kathrane, it was specifically agreed that all interest in the $4,500 deposit “ shall remain vested in the Assignors * * * with final payment to include accrued interest, shall be received by Assignors.” Thus, plaintiffs, as “ the person making the deposit,” are entitled to recover from Eepetti the sum of $4,500, with interest therein from April 3,, 1969.
*202 As far as Sarflo is concerned, while Repetti turned over to Sarflo the sum of $4,500 which constituted at least part of the trust res, Sarflo was not shown to have had actual or constructive notice that it was receiving converted trust funds. Sarflo’s position was simply that of one who had purchased premises, subject to a lease and who had received security deposits in accordance with that lease. While no interest on this sum of $4,500 was turned over, this, of itself, would not put Sarflo on notice since this did not indicate commingling and, moreover, Repetti might have paid over interest to plaintiffs as permitted by subdivision 2 of section 7-103 even though he was not require^ to have done so. This failure to receive interest was insufficient to overcome the presumption, upon which Sarflo could rely, that a trustee has faithfully administered his trust. (Bonham v. Coe, 249 App. Div. 428, affd. 276 N. Y. 540.) Accordingly, Sarflo cannot be liable for the return of converted trust funds which, as far as the record shows, it received in good faith when it purchased the premises.
Any liability of Sarflo with respect to the $4,500 received from Repetti is limited to that which may arise from its position as landlord holding the security deposit pursuant to the lease. (See General Obligations Law, § 7-105, subd. 2.) The court interprets subdivision (4) of paragraph Fourth of the lease to mean that, on the dates stated therein, upon the landlord being paid the required rent from a tenant in possession, the landlord is bound to return the deposit to the extent that the rent for any such date is paid. (Even if this provision is regarded as ambiguous, the lease, having been drawn by the landlord, is to be construed strictly against the landlord. Evelyn Bldg. Corp. v. City of New York, 257 N. Y. 501, 513.) The court finds that all rents due at the time of trial have been paid. Accordingly, since the assignment of the lease was made on October 16, 1969, the deposit is to be returned to the extent that rent was paid 12 months later, that is, on November 1, 1970 (amounting to $650) and again on November 1, 1971 (amounting to $750). Sarflo’s argument that it cannot pay over such sums without permission of the tenant in possession is untenable. The first assignee of the lease, Kathrane, never had an interest in the security deposit and subsequent assignees have no greater rights. As pointed out above, all'interest in this deposit remained in plaintiffs so that they are entitled to recover these sums from Sarflo.
The court recognizes that, while plaintiffs are entitled to a judgment against both Repetti and Sarflo in the amounts indicated, they may not recover a total sum greater than $4,500 *203 with interest thereon from April 1, 1969. To the extent that Eepetti may pay this sum, he may have a claim over against Sarflo. While the court has considered the possibility of making a determination concerning any such claim, even though it was not asserted (cf. Sterling Nat. Bank. & Trust Co. of N. Y. v. Merchant’s Bank of N. Y., 48 Misc 2d 72, 75), the court finds that the details of the relationship between Eepetti and Sarflo may not have been as fully presented as they would have been had such a claim actually been made, and, accordingly, no such determination is being made in this action. However, the decision herein is without prejudice to the assertion of such a claim by Eepetti against Sarflo in another action. Also, plaintiffs may, if they do not recover the total sum granted them herein, bring such further actions against Sarflo to recover additional sums they may claim are owing to them under subdivision (4) of Paragraph Fourth of the lease commencing with sums claimed to be due on November 1,1972.
As far as the $1,500 deposit is concerned, there was no commingling shown. However, the notice provisions of subdivision 2 of section 7-103 of the General Obligations Law and section 7-105 were violated. The question presented is whether violations of such provisions entitle “ the person making the deposit ” to a return of the deposit. Actually, the statutes themselves do not state that a violation of any of their provisions entitles such person to a return of his deposit. Where there has been commingling, such person may be entitled to the return of his deposit only because the statute declares that a trust has been created, and, under the law of trusts, a commingling constitutes a conversion entitling the cestui que trust to recover the trust funds. (Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.], 22 A D 2d 352, supra; Bonham v. Coe, 249 App. Div. 428, affd. 276 N. Y. 540, supra.) Presumably, if it were intended that any violation of the statute, should, of itself, require a return of the deposit, the statute would have said so. (160 Realty Corp. v. 162 Realty Corp., 113 N. Y. S. 2d 618, affd. 280 App. Div. 762, supra.) In the absence of such a statement, the court concludes that the loss of the deposit was not the intended penalty. The court observes that when it was intended to fix a specific penalty for a violation, specific provision was made. See subdivision 3 of section 7-105 of the General Obligations Law, declaring that any failure to comply with that section is a misdemeanor. Accordingly, the court finds that violations of the notice provisions do not entitle plaintiffs to a return of a deposit. (See Tow v. Maidman, 56 Misc 2d 468, supra.)
*204 CLAIM AGAINST HAUGH AND MULLINS
. Plaintiffs also seek to recover $10,000 damages against defendants Haugh and Mullins, the attorneys who represented them in their dealings with Kathrane and Bepetti, for negligence and malpractice. These attorneys have interposed a counterclaim for legal services rendered in the amount of $1,500. Plaintiffs argue that they put up $6,000 without getting adequate protection for this sum when they assigned the lease, and also that these attorneys “ allowed and permitted the plaintiffs to accept” Kathrane’s unsecured notes of $13,000 when they assigned the lease. The court finds that the arrangements made were not negotiated by these attorneys and that' plaintiffs, who were experienced businessmen, either negotiated the deals themselves or, in connection with the Kathrane deal, negotiated through a broker. The general measure of liability is that the attorneys perform their services with due care and average skill. (Matter of Weinberg v. Needleman, 226 App. Div. 3, affd. 252 N. Y. 622.) Plaintiffs have failed to show that these attorneys failed to perform their services in this manner and, accordingly, their cause of action, against defenants Haugh and Mullins is dismissed. The latter did not introduce evidence in support of their counterclaim and the counterclaim is also dismissed.
CONCLUSION
It is directed that judgment be entered as follows: In favor of defendant Kathrane asrainst plaintiffs; in favor of plaintiffs against defendant Bepetti in the sum of $4,500 with interest thereon from April 1, Í969: in favor of plaintiffs against defendant Sarflo in the sum of $1,400, with interest on $650 thereof from November 1, 1970, and with interest on $750 thereof from November 1, 1971; in favor of defendants Haugh and Mullins against plaintiffs on the latter’s complaint and in favor of plaintiffs against these defendants on their counterclaim.