In the Matter of THE PEOPLE OF THE STATE OF NEW YORK, by Louis J. Lefkowitz, Attorney-General of the State of New York, Respondent-Appellant, v MORRIS BOOKE, Individually and Doing Business as WELLBUILT MANAGEMENT Co., et al., Appellants-Respondents.

First Department, June 21, 1977

*Saul I. Radin* for appellants-respondents.

*Maurice A. M. Edkiss* of counsel *(Samuel A. Hirshowitz, Meyer H. Mencher, Sol Koenigsberg,* and *Nathaniel Saperstein* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for respondent-appellant.

MURPHY, P. J. This proceeding was commenced under section 7-107 of the General Obligations Law and subdivision 12 of section 63 of the Executive Law to compel the respondent owners to pay appropriate interest on rent security deposits and otherwise comply with the mandates of section 7-103 of the General Obligations Law. Although the petition is only addressed to three buildings owned by the respondents, the

present papers discuss two other buildings owned by them. Therefore, the petition will be deemed amended to cover the entire five buildings.

Respondent Booke is the owner of four buildings and respondent 230 East 12th Street Corporation is the owner of one building in Manhattan. Each building contains six or more family units with a total of 208 apartments. Before July of 1976, the respondent owners never maintained individual bank accounts for the rent security received from their tenants. However, they allege that they have deposited the rent security in two "mass" accounts (Booke and corporate accounts). Over the years, $21,501.11 has been withdrawn from the Booke account while $14,459.33 has been taken from the corporate account. After this proceeding was commenced, the respondents set up individual bank accounts for the present tenants in the five buildings. At present, a balance of $6,894.13 remains in the Booke account.

The petitioner, the Attorney-General, avers that the respondents have not paid interest on the rent security to present and former tenants in the five buildings. He further asserts that the respondents improperly withdrew the moneys from the two "mass" accounts. The petitioner also emphasizes that the owners failed to set up individual accounts for the tenants and to notify them of that fact. Lastly, it is stressed that an advance by a Dr. Phyllis Chesler has not been placed in an individual bank account and has not been returned to her even though an apartment was not made available, as promised. Parenthetically, the respondents contend that Dr. Chesler breached her agreement to lease.

The court at Special Term directed, *inter alia,* that:

(1) the respondents pay over to the petitioner all moneys withdrawn from the "mass" accounts plus any additional moneys remaining in those accounts so that the true owners thereof could be ascertained;

(2) the respondents pay interest to present and former tenants in four of the buildings and to present tenants in one of the buildings; (3) the petitioner attempt to locate all tenants to whom money was owed;

(4) the respondents pay to the petitioner $2,000 plus other enumerated expenses to be incurred in the search for the present and former tenants;

(5) the respondents, within 90 days, could recoup any money

turned over to the petitioner upon proper proof of ownership thereof;

(6) the respondents to maintain individual bank accounts for the tenants' rent security and to inform them that the accounts had been established in their individual names;

(7) the respondents to keep detailed business records covering the rent security accounts;

(8) the respondents be enjoined from engaging in further fraudulent and illegal acts in violation of section 7-103 of the General Obligations Law and subdivision 12 of section 63 of the Executive Law; and

(9) the petitioner receive $2,000 in costs from the respondents under CPLR 8303 (subd [a], par 6).

It is clear that the respondents have violated subdivision 2-a of section 7-103 of the General Obligations Law by failing to set up individual interest bearing accounts for the rent security and that they violated subdivision 2 of section 7-103 by failing to apprise the tenants of those accounts. The respondent owners have further breached subdivision 2 of section 7-103 of the General Obligations Law by failing to distribute the interest or to apply it toward the rent due. Nonetheless, upon this inconclusive record, it does not necessarily follow that the respondents used all withdrawals for unlawful purposes. During the period under discussion, it should be stressed that the deposits in the "mass" accounts exceeded withdrawals. Furthermore, the petitioner does not contend, except for the Chesler advance, that any tenant failed to receive the principal amount of his security deposit upon moving from the subject buildings. It is quite possible that the respondents made the withdrawals for the legitimate purpose of paying the rent security to those tenants who had moved.

Consequently, this proceeding must be remanded for a hearing to determine the ownership of the funds withdrawn from the "mass" accounts. Upon remand, the court will also seek to ascertain all tenants, past and present, who have not received the return of their principal deposit and/or the interest thereon. If a bona fide dispute exists between the tenant and the particular respondent as to the ownership of the funds, the court will resolve that dispute at the hearing.

The respondents will pay all expenses incurred in attempting to locate prior tenants. After a reasonable search for the former tenants has proved unsuccessful, the court will dispose

of any funds owed to them in accordance with section 1310 of the Abandoned Property Law.

Even though individual banking accounts have been set up for the present tenants, accrued interest has not been credited to those accounts. The accrued interest will be credited to those accounts from the balance now present in the Booke account. When the interest is properly credited to the accounts of the present tenants, they will be notified of that fact. In the notification, the present tenants will be given the option of having the interest directly remitted to them or having it applied toward their rent. If and when the Booke account becomes depleted, the respondents will be held individually liable for any deficiency in interest or principal. Pending the final determination upon remand, the restraining order on the Booke account will continue in force subject to the further directives of the hearing court.

As was noted above, the court directed the respondents to maintain detailed records with regard to the rent security deposits. However, article 7 of the General Obligations Law does not require that such records be kept. Thus, that portion of the order must be stricken.

Furthermore, it should be stressed that the petitioner does not have standing to bring this proceeding under subdivision 12 of section 63 of the Executive Law; the proceeding can only be brought under section 7-107 of the General Obligations Law. *(Matter of People v Parker,* 47 AD2d 611, affd 38 NY2d 743.)* Since the proceeding was not properly brought under subdivision 12 of section 63 of the Executive Law, the additional allowance of $2,000 was not validly awarded under CPLR 8303 (subd [a], par 6). *(Matter of People v Parker, supra.)*

Finally, it should be observed that, in its opinion, the court at Special Term found that subdivision 1 of section 7-103 of the General Obligations Law did not cover the money advanced by Dr. Chesler toward her prospective lease. In view of the fact that the money was advanced on a contract for the use of real property, it fell within the purview of subdivision 1 of section 7-103 of the General Obligations Law. *(Mercantile Exch. Leasing Corp. v Astor-Broadway Holding Corp.,* 3 AD2d 833, affd 4 NY2d 910.)* Nevertheless, since Dr. Chesler may have actually breached her agreement to lease, the court should decide whether the corporate respondent is entitled to a forfeiture of her advance.

Accordingly, the judgment (denominated an order), Supreme Court, New York County (BAER, J.), entered December 9, 1976, directing, *inter alia,* that the respondents pay over to the petitioner all moneys withdrawn from two "mass" security accounts, should be modified, on the law, as hereinabove mentioned, and that, as modified, it should be affirmed, without costs.

KUPFERMAN, LUPIANO and LANE, JJ., concur.

Judgment (donominated an order), Supreme Court, New York County, entered December 9, 1976, unanimously modified, on the law, as mentioned in the opinion of this court, and, as modified, affirmed, without costs and without disbursements.

Settle order on notice.