■ EUJOY REALTY CORP., Appellant, v VAN WAGNER COMMUNICATIONS, LLC, Respondent. [901 NYS2d 227]—

Order, Supreme Court, New York County (Richard F. Braun, J.), entered August 4, 2008, which, in an action for rent in the amount of $94,133.57 and counsel fees arising out of a terminated lease agreement, denied plaintiff landlord's motion for summary judgment, granted the part of defendant tenant's cross motion that sought summary judgment dismissing the complaint and denied the part that sought, in the alternative, leave to amend the answer to add the affirmative defense of estoppel, reversed, on the law, without costs, plaintiff's motion granted and defendant's motion denied in its entirety, and the matter remanded for an assessment of counsel fees.

Plaintiff is the owner of an advertising billboard that it leased to defendant pursuant to a 15-year written lease that commenced on December 1, 2000. When new construction undertaken at a nearby site substantially obstructed the view of the sign, defendant invoked its right under paragraph 53 of the lease to terminate the agreement as of January 8, 2007. Due to an oversight by defendant's accounts payable department, a check for $96,243, the full year's rent for 2007, was sent to plaintiff. When defendant learned of the error, it notified plaintiff that it had stopped payment on the check. Defendant then forwarded a replacement check to plaintiff for $2,109.43, the rent prorated for the period of January 1, 2007 through January 8, 2007. Plaintiff accepted the prorated rent without protest and subsequently commenced this action, seeking recovery of the balance of the full year's rent, plus interest, counsel fees and costs.

Summary judgment in favor of plaintiff was warranted. Schedule A of the lease agreement prescribes the annual basic rent for each year and provides that the tenant shall pay in advance on January 1st of each year. The annual basic rent for the period January 1, 2007 through December 31, 2007 was $96,243, "which Tenant shall pay in advance on January 1, 2007." Section C of schedule A provides, in relevant part, "Should this Lease be terminated for any reason prior to the date of its expiration, Tenant shall not be entitled to the return of any additional rent theretofore paid or any basic rent paid in advance and covering a period beyond the date on which the Lease is terminated."

Although it was obligated to pay the basic annual rent for 2007 on January 1, 2007 and did not do so, defendant asserts that it is not liable to plaintiff for the annual rent because, in 2006, there were discussions between defendant's principal and plaintiff regarding the obstruction of the sign, in which defend-

ant purportedly told plaintiff that the lease would soon be terminated. Defendant claims that it had an alternate location available to use for its customers' advertising, but that, in consideration of its cordial relationship with plaintiff, it agreed to defer terminating the lease for as long as possible. Aside from plaintiff's denial of any such discussions, the lease includes "no oral modification" and "no waiver" clauses, and the record contains no evidence of partial performance by defendant that is "unequivocally referable to the alleged oral agreement" (*Teri-Nichols Inst. Food Merchants, LLC v Elk Horn Holding Corp.*, 64 AD3d 424, 425 [2009], *lv dismissed* 13 NY3d 904 [2009]). Rather, defendant continued to rent the structure as per the lease. Defendant's unilateral act of terminating the lease in early January and then deeming its rent obligation to be limited to a pro rata amount does not establish a modification, "since, if such unilateral conduct were sufficient, the requirement that modifications be in a writing signed by the landlord would be rendered a nullity" (*Joseph P. Day Realty Corp. v Lawrence Assoc.*, 270 AD2d 140, 142 [2000]).

Defendant's purported understanding that it could terminate the lease at any time after January 1, 2007 without being obligated to pay the full year's rent on January 1st as the lease required does not demonstrate that principles of equitable estoppel are applicable here, since plaintiff engaged in no conduct that was "otherwise . . . [in]compatible with the agreement as written" (*Rose v Spa Realty Assoc.*, 42 NY2d 338, 344 [1977]).

Defendant's reliance on section C of schedule A is misplaced. The lease provision that the tenant shall not be entitled to the return of any basic rent paid in advance of lease termination is separate and distinct from the lease requirement that the full year's rent be paid on January 1st. One provision simply makes clear that the rent paid in advance will not be returned upon termination of the lease, while the other plainly provides that the entire year's rent is due on January 1st. It is a contortion of these two provisions to argue, as defendant does here, that if defendant had paid the annual rent on January 1st it would not be entitled to a refund but that since defendant did not pay as required, plaintiff is not entitled to recover the full year's rent. While recovery of the full year's rent under these circumstances is a windfall to plaintiff, it is a result mandated by the lease.

Our dissenting colleague's concern that plaintiff has adopted a new theory of recovery not raised before the motion court and that we are therefore barred from considering it, is unfounded. Notably, defendant has not asserted in this appeal that plaintiff is raising a new theory that should not be considered by this

Court. While plaintiff certainly did argue before the motion court that, notwithstanding that defendant had stopped payment on the check, defendant had paid the rent in advance and was not entitled to a refund, plaintiff also argued that it did not matter that the check was issued accidentally because defendant was obligated under the lease to pay the basic rent for the year on January 1, 2007. Where a lease requires the tenant to pay the rent in advance, the tenant is obligated to pay the entire amount even though the lease is subsequently terminated before the lease term expires (*see 1251 Ams. Assoc. II, L.P. v Rock 49th Rest. Corp.*, 13 Misc 3d 142[A], 2006 NY Slip Op 52282[U] [2006]).

Nor does our holding run afoul of General Obligations Law § 7-103 (1), which prohibits the commingling by a landlord of funds deposited by a tenant as security or prepaid rent, since that situation is not present here. *Matter of Perfection Tech. Servs. Press (Cherno-Dalecar Realty Corp.)* (22 AD2d 352 [1965], *affd* 18 NY2d 644 [1966]) and *Purfield v Kathrane* (73 Misc 2d 194 [1973]), cited by the dissent, involved the tenant's deposit with the landlord of several months of advance rent, to be applied to each month's rent as it became due during the term. Here, in contrast, the terms of the lease provide that the entire year's base rent is due on the first of the year. Finally, we disagree with the dissent's position that in order to recover for the yearly rent due under the lease, the landlord was required to issue a default notice to the tenant since the tenant had already terminated the lease in writing.

We have considered plaintiff's remaining contentions and find them unavailing. Concur—Friedman, Moskowitz and Abdus-Salaam, JJ.

Tom, J.P., and Freedman, J., dissent in a memorandum by Tom, J.P., as follows: On this appeal, plaintiff landlord has abandoned the theory of recovery advanced before Supreme Court, adopting a new argument that this Court is barred from considering by well settled rules of appellate practice. As a result, there is before us no ruling assigned as error that might serve as a predicate for reversal. Moreover, the new theory that landlord has devised to support the recovery of rent after valid termination of the lease is devoid of merit and, even if it were cognizable, affords no basis for disturbing the judgment of dismissal.

In 2000, the parties entered into a 15-year lease for a billboard located on the roof of a building on Maurice Avenue in Maspeth, New York. The advertising space is valuable because it is visible from the Long Island Expressway, and the lease affords tenant

a right of termination should construction "substantially obstruct" the view of the billboard from that highway. When the visibility of the sign was eventually obscured by construction that was begun in 2006, landlord received notice from defendant tenant, first orally and then in writing, that tenant was exercising its right to terminate the lease pursuant to article 53 of the lease rider, effective January 8, 2007. Landlord does not dispute that the lease was validly terminated.

In the meantime, tenant's accounts payable department inadvertently sent landlord a check for $96,243, representing a full year's rent for 2007, pursuant to schedule A of the lease rider. When tenant learned of the mistake, it duly notified landlord and stopped payment on the check. Tenant thereupon forwarded a replacement check to landlord in the amount of $2,109.43 for rent prorated through January 8, 2007, the date of the lease termination.

Landlord commenced this action by filing the summons and complaint on October 17, 2007. The complaint alleges that tenant "timely remitted the annual rent of $96,243.00 by check but thereafter wrongfully stopped payment on the check by reason of [its] termination of the Lease in accordance with Section 53 thereof." The first cause of action seeks to recover $94,133.57 for the "wrongfully stopped payment" (representing the difference between the annual rent and the prorated amount paid by tenant), and the second cause of action seeks reimbursement for the reasonable legal fees and costs incurred by landlord in maintaining the action. Landlord never sought to amend its complaint.

In support of its motion for summary judgment, landlord argued that, "[u]nder the common law, if rent is paid in advance, a tenant is not entitled to a refund of prepaid rent for any period following termination of the lease," and that "[t]he parties did not stipulate to apportion rent paid in advance." Thus, landlord concluded, it is entitled to recover $94,133.57, the balance of the annual rent for 2007 purportedly prepaid by tenant, as well as legal fees and costs, as provided in the lease.

In support of its cross motion seeking dismissal of the complaint, tenant disputed landlord's propositions that the mere issuance of a check for the full year's rent constitutes the advanced payment of rent and that tenant's stop-payment order constitutes its recoupment.

Supreme Court rejected landlord's theory of recovery, as asserted in the complaint and in the moving papers, finding that the tender of a check, payment of which has been stopped, does not amount to the payment of advance rent.

On this appeal, landlord espouses a completely new theory of recovery predicated not on the tender of an instrument of payment asserted to have been improperly stopped, but upon the terms of the lease itself. Landlord now alleges that because the 2007 annual rent was due on January 1, 2007 and the lease was not terminated until later that month, the entire annual rent became a debt on the date it was payable (citing *Matter of Ryan*, 294 NY 85, 95 [1945]). Thus, while conceding that the lease was rightfully terminated as of January 8, 2007, landlord now claims that no part of the obligation to pay the annual rent when it became due was discharged by tenant's exercise of its termination right.

As a matter of practice, an appeal cannot be exploited as a means to assert new arguments. The function of an appellate court is to determine whether an error was made in reaching a decision, not to render a de novo ruling on the basis of some novel ground. Thus, it is settled that a party may not interject, for the first time on appeal, a theory not advanced before the court of original instance (*see Recovery Consultants v Shih-Hsieh*, 141 AD2d 272, 276 [1988]; *see also Cohn v Goldman*, 76 NY 284, 287 [1879] [questions not raised before the trial court cannot be asserted as error on appeal]). Since the basis of landlord's summary judgment motion was limited to the ground set forth in the complaint—that tenant, having paid the annual rent due under the lease, was not entitled to a refund of that amount—landlord cannot advance an alternative theory of recovery before this Court (*see Voorheesville Rod & Gun Club v Tompkins Co.*, 82 NY2d 564, 570 n 1 [1993]; *Lichtman v Grossbard*, 73 NY2d 792, 794 [1988]; *Mount Vernon Fire Ins. Co. v William & Georgia Corp.*, 194 AD2d 366 [1993]). Even this Court's substantial equitable powers "may not be exercised to grant relief on a new theory of recovery first introduced by the appellate court against a party who has had no notice or opportunity to defend against that theory" (*Collucci v Collucci*, 58 NY2d 834, 837 [1983]). Because landlord did not, on the motion, claim that it was entitled to recover the rent due for 2007 *under the lease*, it may not assert that theory of recovery before this Court.

The majority reasons that this Court should entertain landlord's novel argument on its merits because it was asserted in landlord's reply papers. They ignore the well established rule announced by this Court in *Ritt v Lenox Hill Hosp.* (182 AD2d 560, 562 [1992]) and its progeny that a theory asserted for the first time in reply is not cognizable, either by the motion court or on appeal. As we stated in *Lumbermens Mut. Cas. Co. v Morse*

*Shoe Co.* (218 AD2d 624, 626 [1995], citing *Azzopardi v American Blower Corp.*, 192 AD2d 453, 454 [1993]; *Dannasch v Bifulco*, 184 AD2d 415 [1992]), "[a]rguments advanced for the first time in reply papers are entitled to no consideration by a court entertaining a summary judgment motion. This Court has and will require consistent application of the rule." By condoning recovery on a theory not stated in either the complaint or the moving papers, landlord "has been permitted to engage in precisely the sort of maneuvers specifically rejected in *Ritt v Lenox Hill Hosp.* (*supra*, at 562)" (*Azzopardi*, 192 AD2d at 454).

On this appeal, landlord resorts to a novel claim predicated upon a lease that is no longer in effect. Even if this new claim could be entertained, it is without merit. It is undisputed that the lease gave tenant a right of termination should the view of the subject billboard become obscured, that this condition arose and that tenant properly terminated the lease. Landlord nevertheless claims that it is entitled to payment of the balance of the rent due for the 2007 calendar year, reasoning that (1) rent was due on January 1, 2007, while the lease was still in effect; (2) the rent became a "debt" when it was due; (3) the parties did not agree to apportion rent in the event tenant terminated the lease; and (4) under both common law and the lease, tenant is not entitled to a refund of rent that has been paid.

Ignoring the question of whether the tender of a check, payment of which has been stopped, constitutes "payment," landlord quotes from *Werner v Padula* (49 App Div 135, 138 [1900], *affd* 167 NY 611 [1901]): "If by the terms of his lease rent is to be paid in advance, the tenant comes under an absolute engagement to pay it on the day fixed, and he is not relieved from that engagement." Under the terms of the lease under review in *Werner*, more than half the annual rent was due and paid upon signing the lease. The premises were totally destroyed by fire some five weeks later. The court held that the tenant was not entitled to any refund of the rent advanced upon signing since the tenant was under "an absolute engagement to pay it on the day fixed" under the lease agreement and was not relieved from that engagement by the subsequent destruction of the premises by fire.

The harsh result reached in *Werner* has been abrogated by statute, both as to the destruction of leased premises, which landlord acknowledges, and advance payments in general. In 1935, Real Property Law § 233 (L 1935, ch 581), the precursor to General Obligations Law § 7-103 (L 1963, ch 576, § 1, as amended), was enacted, providing that a sum advanced under an agreement for the rental of real property continues to be the

money of the payor and is held in trust by the payee until applied to payments under the agreement, when due (General Obligations Law § 7-103 [1]; *see Glass v Janbach Props.*, 73 AD2d 106, 110 [1980]).[1] The provision is equally applicable to security deposits and prepaid rent (*see Matter of People v Booke*, 58 AD2d 142, 145 [1977] [security deposit]; *Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.]*, 22 AD2d 352, 354 [1965], *affd* 18 NY2d 644 [1966] [advance rent]; *Purfield v Kathrane*, 73 Misc 2d 194, 200 [1973] [same]). Thus, any rent paid by a tenant in advance remains the tenant's property, held by the landlord as a trustee, until applied to the rent when it accrues. In 1937, Real Property Law § 227, the provision directly at issue in *Werner*, was amended to afford relief in the event leased premises are surrendered due to a casualty rendering them unusable, providing, " 'Any rent paid in advance or which may have accrued by the terms of a lease or any other hiring shall be adjusted to the date of such surrender' " (*Hoefler v Gallery*, 8 NY2d 369, 372-373 [1960], quoting L 1937, ch 100).

There is no question that the disputed lease requires an advance payment of rent that is subject to General Obligations Law § 7-103. The rider to the lease expressly provides, "The annual basic rent for the period January 1, 2007 through December 31, 2007 shall be $96,243.00 which Tenant shall pay in advance on January 1, 2007." Furthermore, it is beyond dispute that upon termination of the lease, tenant's obligation to pay rent ceased. "When a landlord accepts a surrender of the premises, this act operates to discharge the tenant from all liability for rent in the future" (*Herter v Mullen*, 159 NY 28, 33 [1899]; *see also Centurian Dev. v Kenford Co.*, 60 AD2d 96 [1977]). In *Matter of Ryan* (294 NY at 95), the Court of Appeals noted that a tenant's obligation to make payment under the rent covenant of a lease is *contingent* and that circumstances may arise under which "the stipulated rent payable in the future by a lessee for the right to occupy leased premises might never become due."

The *Ryan* Court cited with approval *In re Roth & Appel* (181 F 667, 669 [1910]), which states: "Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of

---

1. General Obligations Law § 7-103 (1) provides, in material part: "Whenever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for performance of the contract or agreement or to be applied to payments upon such contract or agreement when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made."

the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives. The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of debitum in praesenti solvendum in futuro.[2] On the contrary, the obligation upon the rent covenant is altogether contingent."

A landlord's acceptance of the surrender of leased premises is inconsistent with the tenant's right of quiet enjoyment, implicating dominion and control over the premises by the landlord or another holder of a superior title (*Sears, Roebuck & Co. v 9 Ave.-31 St. Corp.*, 274 NY 388, 398 [1937]). The act of a tenant in rightfully removing from the premises, thereby enabling the landlord to peaceably recover possession, "cancels the lease and annuls the relation of landlord and tenant as of the time of the removal" (*Cornwell v Sanford*, 222 NY 248, 253 [1918]; *cf. 56-70 58th St. Holding Corp. v Fedders-Quigan Corp.*, 5 NY2d 557, 564 [1959]), entitling the tenant to recover such rent as has been advanced (*Sears, Roebuck & Co.*, 274 NY at 404).

In sum, a tenant is obligated to pay rent, including advance rent, on the date stipulated in the lease. However, the obligation to pay is contingent on the tenant's right to use and occupy the premises, and when that right is terminated the rent obligation thereby ceases. Thus, rent is *due* at the time stipulated in the lease, but rent does not continue to *accrue* unless the tenant continues to enjoy the right to occupy the premises.

When landlord accepted tenant's surrender of the premises upon termination of the subject lease, rent ceased to accrue, removing any basis to apply the money advanced by tenant to further payments due under the lease. The inclusion of a no refund provision does not affect this result. While, in general, "the parties to a lease are not foreclosed from contracting as they please" (*Holy Props. v Cole Prods.*, 87 NY2d 130, 134

---

**2.** "A present debt (or obligation) to be paid at a future time; a debt or obligation complete when contracted, but of which the performance cannot be required until some future period" (Black's Law Dictionary 461 [9th ed 2009]).

[1995]), General Obligations Law 7-103 (3) states that any provision purporting to waive the protection of the statute is "absolutely void."

Money advanced under a lease "remains the property of tenant until there has been a default or breach of a covenant of the lease and at which time landlord may appropriate the deposit in accordance with the terms of the lease" (*Glass*, 73 AD2d at 110 [internal quotation marks omitted], quoting *Matter of State of New York v Parker*, 67 Misc 2d 36, 40 [1971], *revd on other grounds* 38 AD2d 542 [1971], *affd* 30 NY2d 964 [1972]). Since there was no default or breach of the subject lease, there was no basis under General Obligations Law § 7-103 (1) for landlord to appropriate the money advanced by tenant (*see Glass*, 73 AD2d at 110).

Because tenant's obligation to pay rent ceased upon termination of the lease, landlord is relegated to a claim in quantum meruit (*see Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 227-228 [1993]) and is entitled to recover only the reasonable value of tenant's use and occupancy of the sign during the 2007 lease year. Since landlord concedes that it received payment for the eight days of the 2007 lease term during which tenant actually used the sign, landlord has no remaining claim against tenant arising out of its use of the leased premises, and Supreme Court properly dismissed the complaint.

The rationale for the motion court's ruling was correct. The delivery of a check upon which payment was subsequently stopped did not constitute payment of the annual rent for the billboard in question (*see Hutzler v Hertz Corp.*, 39 NY2d 209, 214 [1976] ["Payment by check, sometimes referred to as 'conditional payment,' is not, by itself, payment of the underlying obligation. Only when the drawee bank pays on the check is payment actually effected" (citations omitted)]; *Mariano's Pizzeria Inc. v Associated Mut. Ins. Coop.*, 24 AD3d 206, 208 [2005] ["a check is merely a conditional payment which fails to satisfy the underlying obligation upon dishonor"], citing *Meiselman v McDonalds Rests.*, 305 AD2d 382 [2003]). Therefore, as a matter of law, defendant never paid the basic annual rent for 2007.

Moreover, the default provisions of article 43 of the lease rider include the failure to pay rent as an "Event of Default," stating that if "default shall be made in the payment of basic rent and such default shall continue for a period of ten (10) days after notice thereof shall have been given to Tenant . . . Landlord may, at Landlord's option, give to Tenant a notice of election to end the term of this Lease . . . and Tenant will then quit and surrender the demised premises to Landlord, but Ten-

ant shall remain liable as provided in Article 18 of this Lease." Article 18 affords remedies to landlord in the event of tenant's default, providing that rent payable up to the time of landlord's reentry "shall become due thereupon" and provides for liquidated damages with respect to the remainder of the lease term.

It is clear that the default provisions of the lease rider require landlord to issue notice to tenant before a late rent payment is considered a default. However, no such notice was ever given by landlord with respect to the annual rent due January 1, 2007. Thus, tenant was not in default under the terms of the lease when it was terminated on January 8, 2007 so as to enable landlord to avail itself of its default remedies, including liquidated damages (see *Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC*, 8 NY3d 59, 68 [2006]).

The majority avoids the application of General Obligations Law § 7-103 (1) by construing the terms of the lease and the statute so as to render the statutory protection nugatory. According to the majority's analysis, the $96,243 annual rent, which the lease provides "Tenant shall pay in advance," is not an advance payment at all. Utilizing the premise that "the entire year's base rent is due on the first of the year," the majority transforms what is expressly described in the lease as an "advance" payment of rent into a current payment, thus offending the rule that a court may not "rewrite the terms of an agreement under the guise of interpretation" (*85th St. Rest. Corp. v Sanders*, 194 AD2d 324, 326 [1993]; *Halkedis v Two E. End Ave. Apt. Corp.*, 137 AD2d 452, 453 [1988], *affd for reasons stated below* 72 NY2d 933 [1988]).

Such a tortured construction invites all manner of mischief. For example, a landlord could structure a 10-year commercial lease to avoid the operation of the statute by providing for payment of the entire rent on the first day of the lease, funded by lessor financing that requires monthly payments over the duration of the lease term. Then, even if the lease were validly terminated, none of the money advanced could be recovered by the tenant because all rent would have been due and payable at the outset.

The majority's construction ignores another principle espoused by this Court. As stated in *Matter of Friedman-Kien v City of New York* (92 AD2d 827, 828-829 [1983], *affd for reasons stated below* 61 NY2d 923 [1984]), "[t]he courts will not construe statutes, or rules and regulations of a government agency in such a manner as to thwart the obvious legislative intent and reach absurd and unexpected consequences" (citing *Matter of Chatlos v McGoldrick*, 302 NY 380, 387-388 [1951];

McKinney's Cons Laws of NY, Book 1, Statutes §§ 92, 145, 147). General Obligations Law § 7-103 (1) requires that advance payments be "held in trust" by the landlord. Interpretation of the statute to permit the confiscation of unearned rent thwarts the legislative intent to cast the landlord in a fiduciary capacity (*see Matter of Dial-N-Drive Rent A Car Network [Marvin]*, 62 AD2d 165, 167-168 [1978] [deposit of funds with a lessor creates a trust relationship]).

To embrace the result urged by landlord requires abrogating fundamental aspects of the lease, particularly the need for consideration (the right to occupy the premises as the quid pro quo for the tenant's payment of rent) and the covenant of quiet enjoyment (the right to possess the premises undisturbed by a claim of superior title, including that of the landlord). Moreover, it frustrates the salutary purpose of General Obligations Law § 7-103 (1) by declining to apply a statute governing advance payments under a lease to what the lease expressly states to be an "advance payment." Finally, it requires affording landlord a right to proceed against tenant in the absence of any lease provision that preserves a right to recovery for unpaid rent. In short, a ruling favorable to landlord requires this Court to ignore controlling statutory and case law as well as the terms of the lease for the sake of bestowing a mere windfall.

Accordingly, the order should be affirmed.