PAUL A. ANOSTARIO, Appellant, v VINCENT E. VICINANZO et al., Respondents.

Third Department, March 31, 1977

*Gordon, Gordon & Siegel (Arnold M. Gordon* of counsel), for appellant.

*Richard T. Horigan* for respondents.

KANE, J. In this action for specific performance and related relief, plaintiff alleged that although he had an agreement with the defendant whereby they were to purchase certain realty through the vehicle of a corporation in which each was to become an equal shareholder, the defendant wrongfully breached the same and completed the transaction for his own benefit. Defendant denied making such an agreement and further pleaded the Statute of Frauds as an affirmative defense (see General Obligations Law, § 5-703, subd 1). Trial Term heard the proofs and arguments of the parties and plaintiff now appeals from its judgment dismissing his complaint for want of sufficient compliance with the requirements of that statute.

The record demonstrates that the National Commercial Bank and Trust Company was the prime tenant in a seven-story office building located in downtown Amsterdam, New York, which it owned through an intermediary and desired to sell. Defendant, the attorney for this branch of the bank, was a member of its regional advisory board, maintained offices in the building, was aware of the bank's position, and wanted to buy the property on advantageous terms. After some negotiations had taken place, he approached his friend and former client, the plaintiff herein, and invited his participation in the proposed transaction.

On December 31, 1971 the parties traveled to Albany and signed an agreement with the owner in which, for a considera-

tion of $560,000, title to the property would be conveyed to a corporation to be created by them. Plaintiff and defendant obviously intended to minimize any individual financial risks for the contract was also subject to contingencies that the proposed corporation, or they as its promoters, be able to secure a $575,000 mortgage loan and a specific long-term lease continuing National Commercial Bank and Trust Company as a tenant with rents reserved in an amount that would largely amortize the mortgage obligation. If they were unable to meet the foregoing contingencies, the deposit of $35,000 called for in the contract was to be returned by the seller. The defendant left his personal check for the down payment with a representative of the seller, but told the plaintiff funds would have to be borrowed to cover it.

On January 3, 1972 the parties jointly executed a promissory note in favor of the National Commercial Bank and Trust Company for $37,000, deposited the proceeds in a joint account, and sent their jointly drawn check for $35,000 to the seller's representative in replacement of defendant's instrument. The proposed corporation was formed through defendant's efforts on March 3, 1972 and, three days later, the parties assigned their interest in the December 31, 1971 contract to this corporation. In the meantime defendant had obtained a mortgage commitment from the Albany Savings Bank in the sum of $580,000. The closing took place as scheduled on March 31, 1972; title was transferred to the new corporation; National Commercial Bank and Trust Company executed a lease for a portion of the building and made its first monthly rental payment; the note of the parties was repaid and canceled; and, after settling with the former owner and paying a fee of $7,500 to a mortgage broker whose son was an officer of the Albany Savings Bank, the new corporation commenced its control of the property. Defendant attended to all matters connected with the closing and remains the sole shareholder of the new corporation.

According to plaintiff's version of these events, his assistance had been solicited to manage the building and service tenants after the takeover, while defendant had accepted for himself the responsibility of handling the negotiations and legal matters preceding the acquisition agreeing that they would share equally in this enterprise. Defendant, on the other hand, recounted that he had consistently asked plaintiff to contribute capital in exchange for a minority interest in the

project, but that the amount of this investment was never fixed or tendered. Finally, both parties agreed that their relationship ended sometime after the assignment and before the closing.

Upon this set of facts Trial Term correctly decided that the alleged contract fell within the Statute of Frauds and was not exempt from its requirements by operation of the so-called joint venture exception. It is clear that plaintiff sought to enforce an oral agreement which had the purchase of real property as its final objective (*Rizika v Kowalsky,* 285 App Div 1009), and it is equally plain that he voluntarily assented to carry out that plan in corporate form, thereby precluding a joint venture association between the parties (*Weisman v Awnair Corp. of Amer.,* 3 NY2d 444; see *Carpenter v Weichert,* 51 AD2d 817). In addition, we also agree with Trial Term that none of the writings proffered by plaintiff, either separately or collectively, adequately spelled out the terms of the supposed agreement (*Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48; *Marks v Cowdin,* 226 NY 138). However, although not argued by the parties, we are persuaded that the instant judgment should be reversed and a new trial granted to plaintiff because his evidence did establish yet another exception to the Statute of Frauds, namely, that of part performance.

Originally entitled "An Act for the Prevention of Frauds and Perjuries" (29 Car II, ch 3, § 4 [1677]), it has earnestly been debated for almost 300 years whether enforcement of its provisions accomplished more mischief than good by protecting frauds rather than preventing them. In recognition of this difficulty, the doctrine of part performance has been carved out of the present day enactment, as an exception to the ritualistic construction often accorded to it, on the theory that equity will not permit its interposition as a shield for the perpetration of fraud (General Obligations Law, § 5-703, subd 4; see *Canda v Totten,* 157 NY 281; *Ryan v Dox,* 34 NY 307). Even though this doctrine is founded on relatively simple principles of equitable estoppel (see 56 NY Jur, Statute of Frauds, §§ 246, 334), a line of judicial authority has evolved over the years producing somewhat technical rules governing its application.

In *Burns v McCormick* (233 NY 230) and *Woolley v Stewart* (222 NY 347) the plaintiffs sought to compel the specific performance of alleged oral contracts for the conveyance of

real property. They met with no success because their actions in claimed part performance of the agreements were susceptible of differing explanations. It is worthy of note, however, that in *Burns* the performance required was said to be that "which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing" *(Burns v McCormick, supra,* p 232), whereas in *Woolley* it was observed that part performance was not established by "[a]n act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose" *(Woolley v Stewart, supra,* p 351).

In this case plaintiff's actions defy comprehension other than as efforts to further an understanding to participate as an owner of the new corporation. He signed the purchase agreement, note and assignment in an equal capacity with the defendant. True, his activities in contacting potential suppliers before the closing are equivocal and subject to various interpretations, but one does not generally place his name on a promissory note with another as an eleemosynary gesture. Plaintiff's later execution of the assignment while that note was still outstanding would be extraordinary indeed if it were done in the expectation of mere employment by the new corporation. The fact that additional personal investment was unnecessary, owing to the size of the mortgage procured by the defendant in this remarkable transaction, does not lessen the force of plaintiff's deeds; it simply presents a factual matter for Trial Term to entertain in its resolution of the opposing contentions of these parties. Without reference to words of promise, plaintiff gained some degree of interest in the transaction when he signed the purchase agreement and he became fiscally obligated thereto when he signed the note. The assigment of that interest to the new corporation was needed to allow the matter to proceed and it can be logically explained only as an incident of assured ownership in that entity. Defendant's assertion that an equality of participation was never agreed upon may ultimately prevail, but Trial Term did not reach that issue and we conclude that the Statute of Frauds may not be raised as a bar to prevent it from considering whether any contractual accord had been reached and, if it had, from determining whether and to what extent plaintiff is entitled to relief.

The judgment should be reversed, on the law and the facts, and a new trial ordered, without costs.

MAHONEY, J. (dissenting). It is clear that the contract sought to be enforced was oral and had as its purpose the purchase of realty. It is settled New York law "that an oral contract by two or more persons to purchase real estate for their joint benefit * * * involving no element of partnership, falls within the ban of the Statute of Frauds" *(Rizika v Kowalsky,* 207 Misc 254, 259-260, affd 285 App Div 1009; General Obligations Law, § 5-703, subd 1). Therefore, since the alleged agreement contemplated the purchase of realty through the vehicle of a corporation, it is unenforceable unless some note or memorandum evidencing the transaction and subscribed by the party to be charged exists. The trial court found none. I agree.

Neither the promoter's agreement of December 31, 1971, the promissory note, the assignment, the bank ledgers, the lease nor the deed, separately or collectively, contain any of the terms of the alleged oral agreement between the parties. The December, 1971 promoter's agreement specifically recites that the agreement imposes no liability on the parties; the assignment by the parties of their right to purchase the bank to Amsterdam Commercial Corporation is void of any terms of contract between the parties; the lease between the National Commercial Bank and Trust Company and the new corporate owner, as well as the deed between the old and new owners of the structure, is silent as to any terms of an agreement between the parties. While these documents provide evidence from which the existence of *some agreement* between the parties may be inferred, the writings are wholly inadequate to satisfy the requirements of the Statute of Frauds. To do that, the instruments, separately or collectively, must evidence the terms of the agreement *(Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48; *Marks v Cowdin,* 226 NY 138). The internal substantive matter of the documents relied upon by plaintiff is not connected in such a manner as to spell out an agreement that the parties were each to own one half the stock of the new corporate owners of the bank building. They fail to satisfy the Statute of Frauds (General Obligations Law, § 5-703, subd 1).

Next, the joint venture exception to the requirements of the Statute of Frauds is not available to plaintiff despite his complaint allegations and proof that he and defendant Vicinanzo were to jointly buy, operate, manage and share in the losses and profits of the realty operation. When individuals

decide to conduct business through a corporation, as here, they cannot be joint venturers. The law will not permit those who deal with the public to be simultaneously joint venturers and stockholders, fiduciaries and nonfiduciaries, personally liable and not personally liable *(Weisman v Awnair Corp. of Amer.,* 3 NY2d 444, 449; see, also, *Carpenter v Weichert,* 51 AD2d 817, 818). Since the parties herein clearly determined to carry out their plan in a corporate structure, they were not joint venturers.

Nor is the agreement sought to be enforced saved from statutory condemnation by part performance of the plaintiff. Oral agreements may be enforced in courts of equity when the part performance of one party so irremediably alters his position that the interposition of the requirements of the Statute of Frauds would work an injustice *(Kolodziej v Kolodziej,* 54 AD2d 228). However, the setting aside of the statutory requisites requires conduct "unequivocally referable" to the oral agreement *(Burns v McCormick,* 223 NY 230, 232). The conduct or performance relied upon as invocatory of the exception must be such that it alone, unaided by words of promise, is unintelligible except as the sole response to the promise sought to be enforced. An act which admits of explanation without reference to the oral contract is equivocal and fails to meet the standard of being "unequivocally referable". If what is promised gives significance to what is done, it is not enough. What is done must supply the only key to what is promised *(Burns v McCormick, supra; Woolley v Stewart,* 222 NY 347, 351). Herein, the acts of plaintiff are equivocal since they are as reasonably related to an expectation of obtaining a minority interest in the newly created corporation or to any expectation of compensation as they are to the alleged oral promise of defendant to convey 50% of the stock of the new corporation to plaintiff. Since plaintiff's conduct admits of explanation, it cannot qualify as part performance foreclosing the application of the Statute of Frauds.

The judgment dismissing the complaint should be affirmed.

KOREMAN, P. J., SWEENEY and LARKIN, JJ., concur with KANE, J.; MAHONEY, J., dissents and votes to affirm in a separate opinion.

Judgment reversed, on the law and the facts, and a new trial ordered, without costs.