[4 NE3d 336, 981 NYS2d 326]

Eᴜᴊᴏʏ Rᴇᴀʟᴛʏ Cᴏʀᴘ., Respondent, v Vᴀɴ Wᴀɢɴᴇʀ Cᴏᴍᴍᴜɴɪᴄᴀ-ᴛɪᴏɴs, LLC, Appellant.

Argued October 8, 2013; decided November 26, 2013

## POINTS OF COUNSEL

*Scheichet & Davis, P.C.*, New York City (*Victor P. Muskin* and *Khine Z. Aung* of counsel), for appellant. I. Respondent's unpleaded claim for posttermination rent should be dismissed. (*1251 Ams. Assoc. II, L.P. v Rock 49th Rest. Corp.*, 13 Misc 3d 142[A], 2006 NY Slip Op 52282[U]; *Matter of Bombay Realty Corp. v Magna Carta*, 100 NY2d 124; *Ronnen v Ajax Elec. Motor Corp.*, 88 NY2d 582; *Herter v Mullen*, 159 NY 28; *Matter of Ryan*, 294 NY 85; *In re Roth & Appel*, 181 F 667; *Cornwell v Sanford*, 222 NY 248; *Banque Worms v BankAmerica Intl.*, 77 NY2d 362; *Bank of New York v Spiro*, 267 AD2d 339; *Werner v Padula*, 49 App Div 135.) II. Respondent's claim is barred by General Obligations Law § 7-103. (*Matter of People v Booke*, 58 AD2d 142; *Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.]*, 22 AD2d 352, 18 NY2d 644.) III. Respondent's "due date" argument should not have been entertained. (*Lumbermens Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624; *Ritt v Lenox Hill Hosp.*, 182 AD2d 560.) IV. The majority's grant of summary judgment for respondent improperly adjudicated triable issues of fact under appellant's alternative claims. (*Rose v Spa Realty Assoc.*, 42 NY2d 338; *Joseph P. Day Realty Corp. v Lawrence Assoc.*, 270 AD2d 140; *Holt v Feigenbaum*, 52 NY2d 291; *Triple Cities Constr. Co. v Maryland*

*Cas. Co.*, 4 NY2d 443; *Stendig, Inc. v Thom Rock Realty Co.*, 163 AD2d 46; *Riverside Research Inst. v KMGA, Inc.*, 108 AD2d 365; *Esteve v Abad*, 271 App Div 725; *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395.)

*Schnaufer & Metis, LLP*, Hartsdale (*John C. Schnaufer* and *Peter Metis* of counsel), for respondent. I. No new theory of recovery was advanced by landlord before the motion court. (*Lumbermens Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624.) II. Tenant is obligated to pay the annual basic rent for 2007, notwithstanding termination of the sign lease on January 8, 2007. (*Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC*, 8 NY3d 59; *34 W. 34th St. Corp. v Nehama Realty Corp.*, 7 Misc 2d 532; *Giles v Comstock*, 4 NY 270; *Matter of Ryan*, 294 NY 85; *Bottlers Seal Co. v Rainey*, 225 NY 369; *Werner v Padula*, 49 App Div 135, 167 NY 611; *Smathers v Standard Oil Co.*, 199 App Div 368, 233 NY 617; *Goldsmith v Schroeder*, 93 App Div 206; *Sperry v Miller*, 8 NY 336; *1251 Ams. Assoc. II, L.P. v Rock 49th Rest. Corp.*, 13 Misc 3d 142[A], 2006 NY Slip Op 52282[U].) III. Tenant was not entitled to a notice of default under article 43 of the lease before landlord could sue for the rent and the termination of the lease did not extinguish landlord's right to sue for the 2007 rent. (*219 Broadway Corp. v Alexander's, Inc.*, 46 NY2d 506; *Geraci v Jenrette*, 41 NY2d 660; *Sperry v Miller*, 8 NY 336; *Aronson v Markulin*, 39 Misc 2d 273; *Petrelli v Kagel*, 37 Misc 2d 246; *Hampton v Flesser*, 133 Misc 705.) IV. General Obligations Law § 7-103 does not apply to an annual installment of rent which the tenant is obligated to pay in advance on the first day of the year. (*34 W. 34th St. Corp. v Nehama Realty Corp.*, 7 Misc 2d 532.) V. Tenant's position on the no waiver clause of the lease is incorrect. (*Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y.*, 61 NY2d 442; *Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave.*, 1 AD3d 65; *Monarch Info. Servs. v 161 William Assoc.*, 103 AD2d 703; *Dennis & Jimmy's Food Corp. v Milton Co.*, 99 AD2d 477, 62 NY2d 613; *Renali Realty Group 3 v Robbins MBW Corp.*, 259 AD2d 682; *Pollack v Green Constr. Corp.*, 40 AD2d 996, 32 NY2d 720.) VI. Tenant can neither factually nor as a matter of law establish an oral agreement which modifies or amends the lease or creates an estoppel. (*Joseph P. Day Realty Corp. v Lawrence Assoc.*, 270 AD2d 140; *Rose v Spa Realty Assoc.*, 42 NY2d 338.)

**OPINION OF THE COURT**

READ, J.

This appeal calls upon us to interpret a lease's payment terms. We conclude that the pertinent lease obligated defendant tenant

Van Wagner Communications, LLC (Van Wagner) to pay the full annual basic rent for calendar year 2007 to plaintiff landlord Eujoy Realty Corp. (Eujoy) on January 1, 2007. Although Van Wagner terminated the lease a week later, the parties did not agree in the lease to apportion rent posttermination except in specified circumstances not relevant here; and Van Wagner's claim that the parties agreed orally to such apportionment is barred by the lease's "no oral modification" clause.

<u>I</u>

Eujoy owns a building in Maspeth, Queens, with a steel frame structure for advertisements atop the roof. Van Wagner is in the outdoor advertising business in the New York City region and other major metropolitan areas in the United States. On October 18, 2000, Van Wagner leased Eujoy's billboard for a period of 15 years, commencing December 1, 2000 and ending September 30, 2015. Schedule A of the lease,[1] which details the amount of "basic rent" for each year during the lease's term, states as relevant to this appeal that

> "[t]he basic rent . . . shall be in the following amounts and paid as follows:
>
> "A. *Basic Rent* . . .
>
> "*Lease Year 7*—The annual basic rent for the period January 1, 2007 through December 31, 2007 shall be $96,243.00 which [Van Wagner] shall pay in advance on January 1, 2007 . . .
>
> "C. *No Return of Basic Rent* . . .
>
> "Should this Lease be terminated for any reason prior to the date of its expiration, [Van Wagner] *shall not be entitled to the return of . . . any basic rent paid in advance and covering a period beyond the date on which the Lease is terminated,* provided, however, that . . . should this Lease be terminated pursuant to either Article 9 [fire or casualty], 10 [condemnation] or 50 [the enactment of any law making the billboard's use illegal], the basic rent

---

**1.** The parties created their agreement by customizing the standard form lease copyrighted by the Real Estate Board of New York, Inc.

shall be paid through the date of termination and basic rent paid on account of any period subsequent to termination of the Lease shall be returned to [Van Wagner]" (emphasis added).

Van Wagner considered Eujoy's billboard desirable for advertising because of its visibility to passing traffic on the nearby Long Island Expressway (LIE). The parties therefore executed article 53, a second rider to the agreement, to give Van Wagner the right to terminate the lease if this view was ever "substantially obstruct[ed]" by "the erection of a new building or the increase in height of a building between the location of [the billboard] and the [LIE]."

In early January 2007, Van Wagner forwarded Eujoy a check for $96,243, the annual basic rent for the year; the check was dated January 2, 2007. Van Wagner quickly stopped payment, however, later claiming that "due to an internal oversight," this check was "accidentally" and "erroneously" issued. Then on January 16, 2007, Van Wagner's executive vice-president wrote a letter to Eujoy's co-owner to confirm his conversation with her brother, another co-owner, of January 10, 2007 advising him that Van Wagner had terminated the lease, effective January 8, 2007, pursuant to article 53. A check for $2,109.43, representing rent for the period of January 1 through January 8, 2007, was enclosed with this letter.

By complaint dated October 17, 2007, Eujoy sought, in a first cause of action, the balance of the basic rent for 2007 ($96,243.00 - $2,109.43 = $94,133.57); and, in a second cause of action, asked for reasonable legal fees and costs incurred because of Van Wagner's default on its alleged payment obligation under the lease. Eujoy asserted that schedule A required Van Wagner to pay the basic rent for 2007 in advance on January 1, 2007. In its answer dated November 16, 2007, Van Wagner advanced several affirmative defenses. These included assertions that the lease, and therefore Van Wagner's obligation to pay rent, terminated as of January 8, 2007; and that it properly stopped payment, and the lease did not entitle Eujoy to rent not already received for a period after a valid termination.

On December 19, 2007, Eujoy moved for summary judgment for the balance of the basic rent for 2007, and a hearing to assess attorneys' fees. Eujoy relied on the lease, arguing that "[t]he parties did not stipulate to apportion rent paid in advance and for the period following termination of [the lease] pursuant

to Article 53''; and that article 19 of the lease entitled it to reimbursement of its reasonable attorneys' fees and costs.[2]

On January 31, 2008, Van Wagner cross-moved for summary judgment to dismiss the complaint "based on the lease," or, alternatively, for permission to amend its answer to add an affirmative defense of estoppel. In support of the cross motion, Van Wagner's executive vice-president submitted an affidavit in which he claimed that sometime in 2006 it became apparent that construction then underway would eventually block sight of the billboard from the LIE; and that he discussed this development several times by telephone with Eujoy's co-owner late in the year, informing her that Van Wagner would "soon be compelled" to invoke article 53 to terminate the lease. Further, the view of the billboard from the LIE was substantially impaired long before 2007 and Van Wagner, which had already "prepared" an alternative location, might have terminated the lease much earlier than it eventually did. Van Wagner, however, "agreed [to] keep the advertisements posted . . . , and thus pay rent to [Eujoy], for as long as [Van Wagner] could collect revenues from [its] customer," out of "consideration of the cordial relationship [Van Wagner] had maintained with [Eujoy] over the years, and in order to keep [Eujoy's] stream of rent revenues flowing for as long as possible." He added that because Eujoy "accepted the benefits of [Van Wagner's] extended use of the [billboard] through January 8, 2007 and agreed that the Lease would terminate as of that date . . . , it should not be entitled to collect rent for any subsequent period"; and if Van Wagner had "known that [Eujoy] would assert the claim it makes in this action, [Van Wagner] never would have extended [its] use of the [billboard] into 2007."

In sum, Van Wagner suggested that Eujoy agreed to prorate rent in exchange for Van Wagner's commitment not to invoke article 53 to terminate the lease in late 2006, as it was entitled to do. In response, Eujoy's co-owner submitted an affidavit

---

**2.** Article 19, part of the form lease, states that

"[i]f Owner, . . . in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any action or proceedings, then Tenant will reimburse Owner for such sums so paid or obligations incurred with interest and costs . . . If Tenant's lease term shall have expired at the time of making of such expenditures or incurring such obligations, such sums shall be recoverable by Owner as damages."

denying the conversations described by Van Wagner's executive vice-president ever took place. She added that Van Wagner was not doing Eujoy any favors by refraining from terminating the lease in late 2006 since Van Wagner had already paid the annual basic rent for 2006 at the beginning of January of that year.

But Van Wagner's motion papers focused on the stop payment order in relation to paragraph C of schedule A. That is, Van Wagner maintained that although this provision "means that rent *paid in advance* may not be recovered upon termination of the lease unless the termination is on a ground specified in that clause," here no rent was, in fact, paid in advance because Van Wagner's stop payment order prevented this from happening. Van Wagner also rejected what it characterized as Eujoy's "due date theory," a "fallback argument" that the stop payment order was "irrelevant" because "by virtue of [Van Wagner's] continued occupancy on January 1, 2007, [Eujoy] became entitled to rent for the entire year." According to Van Wagner, Eujoy's reasoning was flawed since, in light of the stop payment order, Van Wagner did not pay any post-termination rent for Eujoy to retain and, in any event, the parties agreed to and acted upon the alternative payment arrangements described by Van Wagner's executive vice-president.

In an opinion dated July 31, 2008, Supreme Court denied Eujoy's motion and granted Van Wagner's cross motion to dismiss the complaint. The court accepted Van Wagner's interpretation of the lease in toto, concluding that although "[p]aragraph C of schedule A gave [Eujoy] the right to keep any basic rent that was paid in advance pursuant to paragraph A for the subject lease year 7," Van Wagner *"did not pay any such rent because [it] stopped payment on the rent check before [Eujoy] cashed it"* (2008 NY Slip Op 33675[U], *1 [Sup Ct, NY County 2008] [emphasis added]). Eujoy appealed.

In May 2010, the Appellate Division, with two Justices dissenting, reversed Supreme Court's order; granted Eujoy's motion for summary judgment; denied Van Wagner's cross motion in its entirety; and remanded the matter for determination of attorneys' fees (73 AD3d 546 [1st Dept 2010]). The court read schedule A of the lease to require Van Wagner to pay Eujoy the basic rent for 2007 in advance, on January 1st of that year, and did not credit Van Wagner's claim that this contractual obligation was altered by an oral agreement. In the latter regard, the court observed that

"the lease includes 'no oral modification' and 'no waiver' clauses, and the record contains no evidence of partial performance by [Van Wagner] that is 'unequivocally referable to the alleged oral agreement' (*Teri-Nichols Inst. Food Merchants, LLC v Elk Horn Holding Corp.*, 64 AD3d 424, 425 [2009], *lv dismissed* 13 NY3d 904 [2009]). Rather, [Van Wagner] continued to rent the structure as per the lease. [Van Wagner's] unilateral act of terminating the lease . . . and then deeming its rent obligation to be limited to a pro rata amount does not establish a modification, 'since, if such unilateral conduct were sufficient, the requirement that modifications be in a writing signed by the landlord would be rendered a nullity' (*Joseph P. Day Realty Corp. v Lawrence Assoc.*, 270 AD2d 140, 142 [2000])" (73 AD3d at 548).

Further, Van Wagner did "not demonstrate that principles of equitable estoppel are applicable . . . , since [Eujoy] engaged in no conduct that was 'otherwise . . . [in]compatible with the agreement as written' " (*id.*, quoting *Rose v Spa Realty Assoc.*, 42 NY2d 338, 344 [1977]).

The dissenters took the position that Eujoy had only argued to the motion court that Van Wagner's check for the basic rent for 2007 was "improperly stopped," and did not rely "upon the terms of the lease itself" (*id.* at 551 [Tom, J.P., and Freedman, J., dissenting]). Putting aside considerations of preservation, the dissenters concluded on the merits that General Obligations Law § 7-103, which prohibits the commingling by a landlord of funds deposited by a tenant as security or prepaid rent, would prevent Eujoy's recovery, and that Eujoy violated the lease's default provisions by failing to give Van Wagner notice that it was in breach.[3]

On September 14, 2010, we dismissed Van Wagner's motion for leave to appeal on the ground of nonfinality (*see* 15 NY3d 819 [2010]). Judgment was entered in Supreme Court on October 9, 2012 upon the parties' stipulation to an award of attorneys' fees. As a result, the appeal comes to us as of right because of the two-Justice dissent (*see* CPLR 5601 [a]), bringing the Appellate Division's order up for our review. We now affirm.

---

**3.** Van Wagner did not raise General Obligations Law § 7-103 or the lease's default provisions at Supreme Court.

## II

### Preservation

Van Wagner contends (and the dissenters in the Appellate Division agreed) that Eujoy's

> "complaint . . . alleged merely that [Van Wagner's] delivery of a check for the full year's rent, even if accidental, and even though stopped, amounted to payment of the rent that [Van Wagner] recovered by virtue of the stop [payment] order. The complaint alleged that the stop payment order thus amounted to recovery of advance rent in violation of the 'no refund' clause in [paragraph C of schedule A of] the lease."

But Eujoy never relied exclusively on this theory of recovery. Notably, paragraph five of its complaint alleges as follows: "5. The annual basic rent *under the Lease* for the period January 1, 2007 through December 31, 2007 was $96,243.00 *which [Van Wagner] was obligated to pay in advance on January 1, 2007*" (emphases added). Eujoy fleshed out this allegation in its sole memorandum of law at Supreme Court, which both replied to Van Wagner's opposition to its motion for summary judgment, and opposed Van Wagner's cross motion for summary judgment. Indeed, Point II of Eujoy's brief is captioned "The Lease Obligated [Van Wagner] to Pay the Annual Basic Rent for 2007 in Advance on January 1, 2007." Van Wagner countered in a reply memorandum of law in further support of its cross motion.

In short, while Van Wagner insists that Eujoy's "due date theory" of the lease was not pleaded, this is simply not the case. And even if Eujoy had, in fact, presented a new legal argument about the lease to Supreme Court in a reply brief, neither that court nor the Appellate Division would have been prohibited from considering it. In the cases relied upon by Van Wagner to say otherwise, the First Department, in effect, declined to endorse sloppy and potentially prejudicial motion practice by entertaining facts presented for the first time in a reply *affidavit* "to which the [nonmoving party] had no right to reply without court permission" (*Lazar v Nico Indus.*, 128 AD2d 408, 410 [1st Dept 1987]; *see also Ritt v Lenox Hill Hosp.*, 182 AD2d 560, 562 [1st Dept 1992] [it does not "avail (the moving party) to shift to (the nonmoving party), by way of reply affidavit, the burden to demonstrate a material issue of fact at a time when

(the nonmoving party) has neither the obligation nor the opportunity to respond absent express leave of court"]; *Dannasch v Bifulco*, 184 AD2d 415 [1st Dept 1992] [same]; *Lumbermens Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624 [1st Dept 1995] [same]; *Azzopardi v American Blower Corp.*, 192 AD2d 453, 453-454 [1st Dept 1993] [the plaintiffs' failure to present the facts adduced on the motion to renew "in connection with the original motion (for summary judgment) was clearly justified since they had not had an opportunity to respond to a claim raised for the first time in the reply papers"]).

The principal issues of law decided by the Appellate Division (in addition to the question of preservation itself)—i.e., whether Van Wagner is indebted to Eujoy for the annual basic rent for 2007 under the terms of the lease and, relatedly, whether the lease's payment terms were modified by an oral agreement—are preserved for appellate review. This is critical because, as we have elsewhere explained, when an issue is not preserved in Supreme Court, the Appellate Division's consideration of it "must be deemed an exercise of its interest[ ] of justice jurisdiction," and "[w]e have no power to review either the Appellate Division's exercise of its discretion to reach [an unpreserved] issue, or the issue itself" (*Hecker v State of New York*, 20 NY3d 1087, 1087 [2013]).[4]

## Rent Paid in Advance

Under the common law, rent is consideration for the right of use and possession of the leased property that a landlord does not earn until the end of the rental period (*In re Roth & Appel*, 181 F 667, 669 [2d Cir 1910]; 1 Friedman & Randolph, Friedman on Leases § 5:1.1 [5th ed 2013]). This presumption may be altered, however, by the express terms of the parties' lease such that rent is to be paid at the beginning of the rental period rather than the end (*see Giles v Comstock*, 4 NY 270, 272 [1850]; *Chemical Bank v Evans & Hughes Realty*, 205 AD2d 573, 574 [2d Dept 1994]; 1 Robert F. Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 12:23 [4th ed 1998]; 1 Friedman

---

4. Although Van Wagner clearly assumes that it would prevail if the "due date theory" were, in fact, unpreserved, this is not necessarily (or perhaps even likely) the case. If we agreed with Van Wagner on this score, we would remit the matter to the Appellate Division (*see Matter of New York State Off. of Victim Servs. v Raucci*, 20 NY3d 1049 [2013]). That Court could then elect to exercise its interest of justice jurisdiction to reach the unpreserved issue and again decide against Van Wagner on the merits. As noted earlier, we would have no power to review these decisions (*see Hecker*).

& Randolph § 5:1.1). When a lease sets a due date for rent, that date is the date on which the tenant's debt accrues (*see* 1 Friedman & Randolph § 5:1.1; *see also Fifty States Mgt. Corp. v Pioneer Auto Parks*, 46 NY2d 573, 578 [1979] ["A covenant to pay rent at a specified time . . . is an essential part of the bargain"]). Rent paid "in advance" (i.e. at the beginning of the term) is unrecoverable if the lease is terminated before the completion of the term, unless the language of the lease directs otherwise (*see 1251 Ams. Assoc. II, L.P. v Rock 49th Rest. Corp.*, 13 Misc 3d 142[A], 2006 NY Slip Op 52282[U], \*1 [App Term 2006]; *Bernstein v Englander*, 25 NYS2d 319, 319 [App Term 1941]; 1 Dolan § 12:23; 1 Friedman & Randolph § 5:1.1).

These rules reflect the strong preference for freedom of contract in the creation of leases, and although it may seem harsh for tenants, the courts assume that the parties have knowingly bargained for the provisions of their agreement. This is especially true in the case of arm's length commercial contracts negotiated by sophisticated and counseled entities (*see Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 695 [1995]). Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. "If they are dissatisfied . . . , 'the time to say so [is] at the bargaining table' " (*id.*, quoting *Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 382 [1986]).

Here, the terms of schedule A of the lease spell out that the full annual rent for each rental period is to be paid "in advance" on January 1 of each of the 15 years of the lease's term, excluding the first year. The rent is described as "annual basic rent," which reinforces that the parties intended for rent to be paid in annual installments. The only other reference in the lease to the amount and periodicity of the rent appears in the preamble, which directs that "the annual rental rate" is "set forth in Schedule A" to the lease.

Next, paragraph C of schedule A explicitly states that Van Wagner is not entitled to "the return" of any basic rent "paid in advance," even if the lease is terminated prior to expiration of a rental period. This language embodies the general rules discussed earlier. It is true that Van Wagner never fully paid the rent due on January 1 because it stopped payment of its first check. But that does not change the fact that the basic rent for 2007 became due on the date assigned in the lease, January 1st of that year. Paragraph C envisages apportionment of rent, but only where the lease is prematurely ended for specified

reasons—i.e., pursuant to articles 9 (fire or casualty), 10 (condemnation) or 50 (the enactment of any law making the billboard's use illegal). Here, though, Van Wagner invoked article 53 to terminate the lease. In sum, Van Wagner accrued a debt for the annual basic rent under the terms of the lease when it remained in possession of the billboard after January 1, 2007, and there is nothing in the law or the language of the agreement that relieves it of that debt.

### Alleged Oral Modification of the Lease

Van Wagner urges in the alternative that, however the lease may be interpreted, the parties orally agreed in late 2006 to modify payment terms, as described by its executive vice-president. The lease includes a standard merger and "no oral modification" clause.[5] The enforceability of such provisions is codified in General Obligations Law § 15-301 (1), which guarantees that any

> "written agreement [that] include[s] a proscription against oral modification . . . 'cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement . . . is sought.' Put otherwise, if the only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties, the writing controls. Thus, the authenticity of any amendment is ensured" (*Rose*, 42 NY2d at 343, quoting General Obligations Law § 15-301 [1]).

As we explained in *Rose*, a party can overcome such a clause and enforce an oral modification to a written agreement by demonstrating either that the oral modification "has in fact been acted upon to completion"; or, where there is only partial performance, that "the partial performance [is] unequivocally referable" to the alleged oral modification (42 NY2d at 343; *see also Walter v Hoffman*, 267 NY 365, 368 [1935]; 1 Robert F.

---

5. Article 21, part of the form lease, states that
   "[a]ll understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or affect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought."

Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 12:17 [4th ed 1998]). This analysis has also been applied to the statute of frauds and its codification at General Obligations Law § 5-703 (*see Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group*, 93 NY2d 229, 235 [1999]).

Additionally, there is "another qualification to the mandates of section 15-301 [which is] [a]nalytically distinct from the doctrine of partial performance"; namely,

> "the principle of equitable estoppel. Once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification. Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written" (*Rose*, 42 NY2d at 344 [citations omitted]).

When the parties dispute whether an oral agreement has been formed, it is the conduct of the party advocating *for* the oral agreement that is "determinative," although the conduct of both parties may be relevant (*see Messner*, 93 NY2d at 237-238; *see also Imperator Realty Co. v Tull*, 228 NY 447, 456-457 [1920, Cardozo, J., concurring]). This is because the equity doctrine is designed to prevent a party from inducing full or partial performance from another and then claiming the sanctuary of the statute of frauds or section 15-301 when suit is brought (*see Messner*, 93 NY2d at 237-238).

In this case, Van Wagner depicts the facts as consistent with its claim of a fully performed oral modification because "no sensible businessperson" would have terminated the lease on January 8, 2007 "if liable for a full year's rent as a result of a week's occupancy," and Eujoy "accepted" the termination along with a check for the prorated rent. As for Eujoy's conduct, article 53 of the lease clearly gave Van Wagner the right to terminate the lease in the event new construction substantially obstructed the view of the billboard from the LIE. Eujoy's acquiescence to termination on this ground was, therefore, compatible with the lease. So, too, Eujoy's acceptance of Van Wagner's check for $2,109.43 since the lease includes a standard

"no waiver" provision.[6] As for Van Wagner's conduct, it might also be said that "no sensible businessperson" would neglect to reduce a lease modification to writing. Regardless, Van Wagner's payment of prorated rent in lieu of the annual basic rent was just as demonstrative of breach of contract as of completion of the purported oral modification. General Obligations Law § 15-301 becomes meaningless if a tenant's nonpayment of the rent required by a lease is sufficient to prove an oral modification of payment terms, or estop the landlord from recovering the shortfall (see *Joseph P. Day Realty Corp. v Lawrence Assoc.*, 270 AD2d at 142). And Van Wagner does not escape section 15-301 or the "no oral modification" provision of the lease by simply saying it fully rather than partially performed an oral modification when making the prorated payment.

We have examined Van Wagner's other arguments and consider them, to the extent preserved, to be unavailing. Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

SMITH, J. (concurring). I join the majority opinion except for its unnecessary restatement of an erroneous preservation rule.

The majority says that if Eujoy's argument were, as Van Wagner argues, unpreserved, that might benefit not Van Wagner but Eujoy (majority op at 423 n 4). This oddity would result from following a very odd rule—one that, as I have explained elsewhere, is without justification (see *Hecker v State of New York*, 20 NY3d 1087, 1088-1089 [2013, Smith, J., concurring]). I continue to hope that the day will come when the rule is abandoned.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT and RIVERA concur with Judge READ; Judge SMITH in a separate

---

**6.** Article 25, part of the form lease, states that
"[n]o payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided."

Van Wagner makes much of the fact that this provision says "monthly" rent. But the preamble defines rent for purposes of the lease only in terms of the categories of rent set out in schedule A; i.e., annual basic rent and "additional rent" totaling $200,000, to be paid to Eujoy in equal installments of $100,000 upon execution of the lease and on October 1, 2001.

428

opinion in which Judge PIGOTT concurs; Judge ABDUS-SALAAM taking no part.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.