R. Kelly Freedman Holding Group, LLC v P & M Brick, LLC (2025 NY Slip Op 05857)

R. Kelly Freedman Holding Group, LLC v P & M Brick, LLC

2025 NY Slip Op 05857

Decided on October 23, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 23, 2025

CV-24-1170
[*1]R. Kelly Freedman Holding Group, LLC, Appellant,
v
P & M Brick, LLC, et al., Respondents.

Calendar Date:September 4, 2025

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Whiteman Osterman & Hanna LLP, Albany (Christopher M. McDonald of counsel) and Holwell Shuster & Goldberg LLP, New York City (Neil R. Lieberman of counsel), for appellant.
Hodgson Russ LLP, Albany (Scott C. Paton of counsel), for respondents.

Garry, P.J.
Appeal from an order of the Supreme Court (Sherri Brooks-Morton, J.), entered May 24, 2024 in Albany County, which, among other things, partially denied plaintiff's motion for a preliminary injunction.
In 2010, plaintiff, a subsidiary of EMR (USA Holdings) Inc., entered into a 20-year commercial lease with defendant P & M Brick, LLC, one of a number of entities under the Carver Companies umbrella, by which plaintiff would rent approximately 6.42 acres of real property in or around the Port of Coeymans from P & M for the operation of its scrap metal recycling business and P & M would perform certain related services for plaintiff. In the most general sense, plaintiff's business model at this time involved the receipt of scrap metal, via truck, directly to the leased premises, where plaintiff would weigh, scan and then stockpile it; after enough material was amassed, P & M would load it onto barges, owned by Carver, and transport it downriver to one of EMR's facilities. In 2011, the parties executed an addendum to the lease, in accordance with its standard integration and no oral modification clause, which principally changed the rates charged for the services provided to plaintiff.
Beginning in 2021 and throughout 2022, Carver sought to entice plaintiff to relocate its operations to one of Carver's comparably-sized sites at the port, citing other interest in the leased premises. It appears that plaintiff was generally willing to relocate for the benefit of the parties' business relationship, but, for various reasons, no agreement was reached at that time. In early 2023, Carver proffered a new relocation concept to plaintiff. Under the new proposal, plaintiff's operations would be moved to a one-acre site in Carver's nearby industrial park and inbound scrap would be weighed using Carver's scale at the park and then either immediately loaded onto a moored barge for stockpiling or temporarily stored on the smaller site until a barge was available; once the volume of material was large enough, Carver would similarly transport the barge downriver. In February 2023, Carver sent plaintiff a second lease addendum generally reflecting that proposal, followed by a revision in August 2023. In September 2023, plaintiff made some handwritten changes to certain terms in the August proposal, signed it and returned it to Carver. Days later, Carver reproposed the terms of its August 2023 proposal. Over the next four months, Carver made three additional proposals in efforts to secure plaintiff's relocation.
It is not disputed that the parties met on January 22, 2024 to discuss a number of matters, including the terms of a second lease addendum and a standalone agreement for additional related services. There is sharp disagreement as to whether there was a meeting of the minds at that time. Plaintiff argues that negotiations remained ongoing, and defendants assert that the parties agreed to proceed under the terms of plaintiff's September 2023 counterproposal, effective [*2]March 1, 2024. After the meeting, the parties engaged in a purportedly successful "test" or "trial" run of the new business model. Thereafter, on February 15, 2024, Carver emailed plaintiff a countersigned version of plaintiff's September 2023 counterproposal. On or around February 21, 2024, the parties began coordinating the relocation of plaintiff's equipment and the clearing of plaintiff's material from the original site. By the end of February 2024, EMR and Carver had executed the aforementioned standalone agreement. At some point in early March 2024, plaintiff began to fully conduct its business from the new site, generally in line with the new business model.
On March 15, 2024, Carver provided EMR with notice that it was canceling all existing short-term service agreements between any of their affiliated companies effective April 1, 2024, other than those reflected in plaintiff's 2010 commercial lease, as amended. Upon receipt of this information, and upon learning that Carver had entered into an agreement to render services to one of EMR's largest competitors, plaintiff commenced the instant litigation, setting forth causes of action for breach of contract, trespass, conversion, forcible detainer and tortious interference with contract. The central allegations in the complaint are that defendants, on February 21, 2024, unbeknownst to plaintiff/EMR and with no written second lease addendum in place, wrongfully entered the original leased premises, removed plaintiff's equipment and fixtures therefrom and ultimately ousted plaintiff to a smaller, less-desirable location that had never been agreed upon. Plaintiff simultaneously moved, by order to show cause, for injunctive relief restoring its possession, use and enjoyment of the original premises. Following an evidentiary hearing, Supreme Court found that plaintiff failed to demonstrate a clear likelihood of success on the merits when considering the parties' conduct following their January 2024 meeting. The court continued a temporary restraining order that was in place to the extent that it prohibited defendants' inference with plaintiff's possession, use and enjoyment of the premises currently occupied but otherwise denied the motion. Plaintiff appeals, exclusively arguing that, because there is more than one potential explanation for its decision to do business at the new site, any reliance by Supreme Court on the doctrine of part performance was misplaced.
A court evaluating a motion for a preliminary injunction must be mindful that the purpose of such provisional relief "is to maintain the status quo and not to determine the ultimate rights of the parties" (Commissioner of the N.Y. State Dept. of Transp. v Polite, 236 AD3d 82, 114 [2d Dept 2024] [internal quotation marks and citation omitted]; see CPLR 6301). To show that the relief is warranted, a plaintiff "must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance [*3]of equities in its favor" (Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]; accord Darwish Auto Group, LLC v TD Bank, N.A., 224 AD3d 1115, 1116-1117 [3d Dept 2024]). Courts have observed that mandatory preliminary injunctions — ones that seek to compel the performance of some act, as is sought here — are rarely granted, and then only in "unusual situations" where affirmative conduct "is essential to maintain the status quo pending trial of the action" (Second on Second CafÉ, Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 264 [1st Dept 2009] [internal quotation marks and citations omitted]; see Uniformed Firefighters Assn. of Greater N.Y. v City of New York, 79 NY2d 236, 241 [1992]; Shake Shack Fulton St. Brooklyn, LLC v Allied Prop. Group, LLC, 177 AD3d 924, 927 [2d Dept 2019]; One Flint St. LLC v Exxon Mobil Corp., 145 AD3d 1490, 1491 [4th Dept 2016], lv denied 148 AD3d 1725 [2017]). Ultimately, "[t]he decision to grant or deny a request for a preliminary injunction is committed to the sound discretion of the trial court, and our review is limited to whether Supreme Court has either exceeded or abused its discretion as a matter of law" (Waldron v Hoffman, 130 AD3d 1239, 1239 [3d Dept 2015] [internal quotation marks, brackets and citations omitted]; see Petry v Gillon, 199 AD3d 1277, 1279 [3d Dept 2021]).
We discern no abuse of discretion in Supreme Court's consideration of the parties' conduct for the purpose of entertaining plaintiff's request for drastic provisional relief. Assuming, without deciding, that there is no enforceable writing here (see General Obligations Law §§ 5-703 [2]; 15-301 [1]), the court was correct to the extent that it implicitly recognized that it would retain the power to compel the performance of any oral agreement between these parties in, among other circumstances, the case of part performance. "[T]he doctrine of part performance is based on principles of equity, in particular, recognition of the fact that the purpose of the [s]tatute of [f]rauds is to prevent frauds, not to enable a party to perpetrate a fraud by using the statute as a sword rather than a shield" (S & G Golden Estates, LLC v New York Golf Enters., Inc., 216 AD3d 831, 832 [2d Dept 2023] [internal quotation marks and citation omitted]; see Anostario v Vicinanzo, 56 AD2d 406, 409 [3d Dept 1977]; see also General Obligations Law § 5-703 [4]; Eujoy Realty Corp. v Van Wagner Communications, LLC, 22 NY3d 413, 425-426 [2013]). Thus, "[a] party may . . . lose the benefit of the defense . . . , or waive its protection, by inducing or permitting without remonstrance another party to the agreement to do acts, pursuant to and in reliance upon the agreement, to such an extent and so substantial in quality as to irremediably alter the situation and make the interposition of the statute against performance a fraud" (Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group, 93 NY2d 229, 235 [1999] [internal quotation marks, brackets and citation [*4]omitted]; see Wells v Hodgkins, 150 AD3d 1449, 1451 [3d Dept 2017]). Plaintiff is correct that a party who seeks to invoke the doctrine of part performance will ultimately have to demonstrate that their actions are "unequivocally referable" to the agreement that they seek to establish — that is, "unintelligible or at least extraordinary, explainable only with reference" thereto (Anostario v Vicinanzo, 59 NY2d 662, 664 [1983] [internal quotation marks and citation omitted]; see Bowers v Hurley, 134 AD3d 1191, 1193 [3d Dept 2015]; see also Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group, 93 NY2d at 236-237). However, as Supreme Court recognized, this pre-answer motion for provisional relief is not one designed to adjudicate the rights of the parties.
Plaintiff argues that it had no choice but to both coordinate with defendants and act in conformity with the so-called second lease addendum after it was functionally ousted from the original premises. According to plaintiff, because defendants allegedly damaged certain of plaintiff's equipment upon their purportedly unauthorized February 2024 entry, plaintiff was forced to operate at the new site, under the new business model, to keep its business running. That argument is not supported by the facts adduced at the preliminary injunction hearing. For example, plaintiff's own proof demonstrated that the alleged damage to plaintiff's automatic scaling and radiation detection systems, while not ideal, did not prohibit it from manually performing those aspects of its business from the original premises. Plaintiff also argues that the ample evidence of the parties' mutual participation in the subject relocation, and ultimately their cooperation under the new business model, must be construed as mere "preparatory steps taken with a view toward consummation of an agreement in the future" (Anostario v Vicinanzo, 59 NY2d at 664). We agree with Supreme Court that the hearing evidence included indicia of an agreement and ensuing conduct that a trier of fact could ultimately find explainable only by reference thereto (see Rose v Spa Realty Assoc., 42 NY2d 338, 345-346 [1977]; Bowers v Hurley, 134 AD3d at 1193; Luft v Luft, 52 AD3d 479, 481 [2d Dept 2008]; South Liberty Realty Corp. v Mercury, 292 AD2d 516, 517 [2d Dept 2002]; compare Aldrich v LNG Enters., Inc., 220 AD3d 1178, 1180-1181 [4th Dept 2023]; 800 Third Ave. Assoc., LLC v Roadrunner Capital Partners LLC, 214 AD3d 429, 429 [1st Dept 2023]; Wells v Hodgkins, 150 AD3d at 1451-1452; RTC Props. v Bio Resources, 295 AD2d 285, 286 [1st Dept 2002], lv dismissed 99 NY2d 531 [2002]). In other words, it is not at all clear that defendants ousted plaintiff from the original premises or otherwise deprived plaintiff of the right to quiet enjoyment thereof such that plaintiff's possession must be restored pending resolution of this action.
Noting that plaintiff has been operating its business from the new site without interruption, we find that Supreme [*5]Court providently exercised its discretion in fashioning the provisional relief that it did.
Clark, Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, with costs.